# MARIE E. F. JOHNSON v. CENTRAL LIFE ASSURANCE SOCIETY OF THE UNITED STATES.[1]

January 13, 1933.

No. 29,161.

*Stearns, Stone & Mackey* and *Fred P. Carr,* for appellant.

*Patrick J. Ryan,* for respondent.

*Alexander & Green* and *Kellogg, Morgan, Chase, Carter & Headley,* amici curiae, filed a brief in behalf of Equitable Life Assurance Society of the United States.

[1]Reported in 246 N. W. 354.

612

*Doherty, Rumble, Bunn & Butler,* amici curiae, filed a brief in behalf of Minnesota Mutual Life Insurance Company and New York Life Insurance Company.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly* and *George W. Jansen,* amici curiae, filed a brief in behalf of Prudential Insurance Company of America.

*Byron K. Elliott, Ralph H. Kastner,* and *Maurice E. Benson,* amici curiae, filed a brief in behalf of American Life Convention.

OLSEN, J.

The defendant appeals from an order denying its motion for a new trial.

The action is one to recover what is known as the double indemnity in case of death caused by accident, under two life insurance policies, issued on May 24, 1923, upon the life of Howard Martin Johnson. The plaintiff is the assignee of the beneficiary named in said policies. The facts are stipulated. Howard Martin Johnson was killed in an automobile accident on May 17, 1931. Due proof of accidental death was furnished to defendant. Each policy provides that the defendant company agrees to pay $1,000 to H. Martin Johnson, the beneficiary, upon due proof of death of the insured, or $2,000 if such death is caused directly by accident, subject to the terms and conditions on the third page of the policy. There is also a disability benefit provided, not here in question. The consideration for each policy is the payment of an annual premium of $29.18, then paid, and the payment of a like amount on the 24th day of May each year thereafter until 20 full-year payments had been made or until the prior death of the insured. There is a provision for payment of premiums semi-annually. The premium includes in each payment $1.75 annually for the double indemnity. The policies are Minnesota contracts, governed by our insurance statutes. The defendant has duly paid on each policy the $1,000 agreed to be paid as straight life insurance, but not the $1,000 additional to be paid in case of death caused by accident.

The insured paid the premiums on the policies until and including the semi-annual premium due May 24, 1929. He paid no fur-

ther premiums, and the policies lapsed November 24, 1929, except as to the policy provisions hereinafter considered. At the time the policies lapsed, the cash or surrender value of each thereof was sufficient to keep both the single life feature and the double indemnity feature in force for a term beyond the date of the death of the insured, but not up to the end of the 20-year payment term.

The policy provisions directly involved read as follows:

"Options on Surrender or Lapse.

"After this policy shall have been in force three full years, the owner, within one month after any default, may surrender this policy and may elect:

"(a) to accept the value of this policy in cash, or

"(b) to have the insurance continued in force from date of default, without the right to loans, for its face amount and outstanding dividend additions less any indebtedness to the Company hereon but without total and permanent disability or double insurance benefits, or

"(c) to purchase non-participating paid-up insurance, payable at the same time and on the same conditions as this policy but without total and permanent disability or double insurance benefits.

&ast; &ast; &ast; &ast; &ast; &ast;

"The term for which the insurance will be continued or the amount of the paid-up policy will be such as the cash value will purchase as a net single premium at the attained age of the insured according to the American Experience Mortality Table and interest at the rate of three and one-half per centum per annum. Such continued and paid-up insurance shall be non-participating.

&ast; &ast; &ast; &ast; &ast; &ast;

"If the owner shall not, within one month from default, surrender this policy to the Company at its Home Office for its cash surrender value or paid-up insurance, as provided in options (a) or (c), the insurance will be continued as provided in option (b)."

Under the head of "Double Insurance Benefit" the policies read as follows:

"If the death of the insured, before a disability claim has been allowed, and before attaining age sixty, results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental causes within ninety days from the occurrence of such accident, of which, except in the case of drowning or of internal injuries revealed by an autopsy there is a visible contusion or wound on the exterior of the body, the Company will pay double the face of the policy provided premiums have been duly paid and this policy is then in force and is then surrendered properly released.

"This agreement to pay an increased amount in event of death from bodily injury does not cover death from suicide, whether sane or insane, nor from military or naval service in time of war, nor from an aeronautic or submarine expedition, nor directly or indirectly from disease in any form, including ptomaine poisoning.

"In event of non-payment of the premium due on this policy this benefit automatically ceases and no further premiums are payable.

"Upon the assured's attaining age sixty this provision shall cease and determine and no further premiums shall be payable.

"In event any premium on this benefit remains unpaid the Company will cancel this provision."

We have then clear provisions in the policies, the contracts entered into by the parties, that the double indemnity, the $1,000 to be paid in case the insured died from accident, should cease and not be included in the extended insurance resulting upon lapse of the policies for nonpayment of premiums. The insured did not elect to take the cash surrender value or paid-up insurance, and the extended insurance automatically went into effect. Counsel have stipulated that the only question to be decided by the trial court is whether the double indemnity feature of the policies was extended and continued in force because of the requirements of the insurance laws of this state, notwithstanding the contrary provisions of the policies; in other words, whether the policy provisions that the double indemnity benefit of the policies would cease and not be included in the extended insurance after the policies lapsed are con-

trary to and invalid under our laws governing insurance contracts. If not prohibited or rendered invalid by our statutes governing insurance, the parties could lawfully make the contracts here in question, and the courts could not change or invalidate the contracts so made except on the ground of fraud or other grounds not here involved.

Plaintiff relies on G. S. 1923 (1 Mason, 1927) §§ 3392 and 3393, reading as follows:

"3392. In event of default in payment of any premium due on any policy, provided not less than three full years' premiums shall have been paid, and provided further, such policy shall not be continued in force by virtue of an automatic loan provision therein, there shall be secured to the insured without action on his part, either paid or extended insurance as specified in the policy, the net values of which shall be at least equal to the entire net reserve held by the company on such policy, less two and one-half per centum of the amount insured by the policy and dividend additions, if any, and less any outstanding indebtedness to the company on the policy at time of default. There shall be secured to the insured the right to surrender the policy to the company at its home office within one month after date of default for the cash value otherwise available for the purchase of the paid-up or extended insurance as aforesaid. Such cash payment to be made within six months after demand therefor.

"3393. No agreement between the company and the policyholder or applicant for insurance shall be held to waive any of the provisions of this act."

These sections are sections 4 and 5 of L. 1907, p. 225, c. 198, entitled: "An act to require an annual apportionment and accounting of surplus of life insurance companies." The act consists of five sections. Section 1 provides that the divisible surplus shall be annually paid or credited to the policyholder. Section 2 provides that the insurance company may set aside part of its surplus as a contingent reserve out of the surplus that otherwise would be a divisible surplus for the policyholder. Section 3 provides that the

policyholder, after the policy has been in force for five years, shall be permitted to select the method of application of the annual surplus on his policy "from among those set forth in the policy."

It is urged that the provision of § 4 of L. 1907, p. 225, c. 198 (G. S. 1923 [1 Mason, 1927] § 3392), that "there shall be secured to the insured without action on his part, either paid or extended insurance as specified in the policy, the net values of which shall be at least equal to the entire net reserve," must be construed to mean that the extended insurance could not differ in any way from the insurance in force before there was any default; in other words, that the extended insurance continued, for the extended term, the same as if there had been no default in payment of premiums. The provision of § 3 of the act, that the insured shall have the right to select the manner of the application "from among those set forth in the policy," rather militates against this construction. If the extended insurance covers only the single life insurance, as provided in the policies, the extension will be for a longer term than if both the simple life and the double indemnity insurance are extended. If the insurance, on default, was automatically extended for such time as the reserve would carry both the life insurance and the double benefit or accident insurance, and the insured, at the end of the period of such extended insurance, elected to have the insurance extended only for the life insurance, not including the accident feature, he would, under this policy provision, have the right to have such extended insurance, and could thereby secure extended simple life insurance for an additional term, although the entire reserve had been used up.

Just after the adoption of L. 1907, p. 225, c. 198, the same legislature adopted L. 1907, p. 249, c. 220. The title of that act reads:

. "An act establishing standard forms in which policies of life insurance may be issued in this state and in which policies of life insurance companies organized under the laws of this state may be issued; and regulating the conditions and provisions to be contained in policies of life insurance companies that do not adopt such standard forms."

Section 2 of the act (G. S. 1923 [1 Mason, 1927] § 3399) sets out six standard forms of life insurance which may be used in this state. Sections 3 to 8, inclusive (G. S. 1923 [1 Mason, 1927] §§ 3400, 3401, 3402, 3406, 3407, 3408), contain provisions governing policies not in any standard form, or varying from the standard forms. It is clear from the title and provisions of L. 1907, p. 249, c. 220, that the standard policy forms therein set forth are permissive and not mandatory, except as to such provisions thereof as are expressly made mandatory by the act. None of the standard forms refer in any way to double indemnity or double benefit in case of death caused by accident. That form of insurance apparently was not in use in this state at that time as a feature of life insurance. It may be noted also that these standard forms provide for the payment of one sum, to be inserted therein, upon proof of the death of the insured at any time while the policy is in force, or death within a time stated where the policy limits the time; or upon the completion of premium payments, where it is an endowment policy providing for such payments; or a fixed sum in instalments where the policy so provides. Nowhere is there any reference to any double amount to be paid in case of death by accident.

We conclude that the policies here in question are not standard forms.

Coming to the provisions governing policies not in the standard form, L. 1907, p. 249, c. 220, § 5(8), G. S. 1923 (1 Mason, 1927) § 3402(8), provides that every such policy shall contain:

"A provision which, in event of default in premium payments, after premiums shall have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on any dividend additions thereto."

The policies here in question do provide a stipulated form of insurance the net value of which equals the reserve at the time of default and outstanding dividend additions, but without double insurance benefits. By the automatic insurance so provided, the insured received a stipulated form of insurance for the full value of

his reserve and dividend additions, and the policy complied with the provisions of this section.

L. 1907, p. 249, c. 220, § 6 (G. S. 1923 [1 Mason, 1927] § 3406), provides that no policy, not in a standard form, shall contain the prohibited provisions therein enumerated. Subd. (4) prohibits the inclusion in such policies of:

"A provision for any mode of settlement at maturity of less value than the amount insured on the face of the policy plus dividend additions, if any, less any indebtedness to the company on the policy and less any premium that may by the terms of the policy be deducted."

Plaintiff relies on this provision as sustaining the construction of prior sections to mean that the extended insurance must include both the life insurance feature and the accident insurance feature. The section relates to settlement at maturity. The defendant well argues that "at maturity" means when the policy matures in the ordinary way by payment of premiums up to the death of the insured, or up to the end of the premium payment period. Again, if it could be held that this policy "matured," although lapsed and in default at the time the insured died, the section must be construed as referring to the "face of the policy" at that time. The face of the policy as extended insurance at that time was $1,000 and did not include double indemnity. Landis v. Metropolitan L. Ins. Co. 104 Ohio St. 589, 136 N. E. 193, 26 A. L. R. 98; Rosso v. New York L. Ins. Co. 157 Miss. 469, 128 So. 343, 69 A. L. R. 883. Having provided in the next preceding section that the policy may contain a provision that in case of default there be secured to the insured a stipulated form of insurance the net value of which shall be at least equal to the reserve at the date of default, plus dividend additions, if any, it cannot be held that the legislature intended by the very next section to invalidate that provision, unless expressly so stated.

Plaintiff relies on the case of New York L. Ins. Co. v. Rositzky, 45 F. (2d) 758, 760, in the federal circuit court, eighth circuit, under the statute of Missouri. The Missouri statute differs from ours in that it provides that the extended insurance shall be "for

the full amount written in the policy," and further provides that "the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium." These provisions are clear and definite and required the decision arrived at in that case.

In the case of Great Southern L. Ins. Co. v. Jones, 35 F. (2d) 122, the same court, but not all the same judges sitting, had construed the Oklahoma statute and had held that under that statute the provision of the policy that the extended insurance did not carry the double benefit for death by accident was valid and controlling. The Oklahoma statute, while not in the exact words of § 3402(8) of our statute, is identical in meaning and effect. In the Rositzky case, 45 F. (2d) 758, 762, the court cited the Jones case, 35 F. (2d) 122, and said in reference thereto:

"It is clear that the Oklahoma statute does not fix the extended insurance as the Missouri statute does, but leaves the matter for agreement in the policy contract. The Oklahoma statute does not provide that the net value of the policy shall be a premium to carry on the insurance 'for the full amount written in the policy,' and that the company in case of death during time of temporary insurance must pay as if there had been no default in payment of the premium, 'anything in the policy to the contrary notwithstanding,' as does the Missouri statute * * *. Therefore the statutes are quite different, as under the Oklahoma statute the parties could stipulate as to form of extended insurance, while under the Missouri statute they could not."

The Rositzky case, 45 F. (2d) 758, is favorable to defendant rather than to plaintiff, and in effect approves the Jones case, 35 F. (2d) 122.

Orr v. Prudential Ins. Co. 274 Mass. 212, 174 N. E. 204, 72 A. L. R. 872; Inter-Southern L. Ins. Co. v. Omer, 238 Ky. 790, 38 S. W. (2d) 931; Young v. Mutual T. L. Ins. Co. 54 N. D. 600, 210 N. W. 177, 53 A. L. R. 910; and Landis v. Metropolitan L. Ins. Co. 104 Ohio St. 589, 136 N. E. 193, 26 A. L. R. 98, tend to sustain defendant's contention. No cases have been presented in point on the precise

question considered except those herein already cited. The Kentucky and North Dakota statutes appear to be the same as ours as far as this question is concerned. Nothing was here forfeited. The insured received extended life insurance for the full value of the reserve on the policy. He had contracted that such insurance should not include the double indemnity in force before there was default in payment of premiums. Thereby he received insurance for a longer term than if the double indemnity, the accident insurance, had been extended.

. In construing insurance contracts it is the general rule that such contracts will be construed most favorably for the insured. That rule does not apply to the construction of the statutes. Where it is claimed that a contract, otherwise valid, is prohibited or invalidated by statute, the statute should expressly so state or otherwise clearly show that the legislature so intended. Freedom to contract is the general rule.

A careful consideration of the relevant sections of our insurance law leads to the conclusion that there is no provision prohibiting or invalidating the terms of these insurance policies that the automatic extended insurance shall not include the double indemnity payable in case of death caused by accident.

The memorandums of the trial court have been helpful in clearly pointing out the question for review and the views of that court. Counsel on both sides have presented their arguments with commendable clearness and brevity.

The stipulations of fact were adopted by the trial court as its findings of fact. As conclusions of law resulting therefrom the court held that the provisions of these policies whereby the defendant eliminated from the extended insurance the obligation to pay double indemnity in case of accidental death were contrary to our statutes and void, and ordered that plaintiff recover judgment for such double indemnity. We reach the different conclusion that, from the facts found, these policy provisions were not contrary to any statute and are valid, and that plaintiff is not entitled to recover.

Nothing can be gained by a new trial. The order appealed from is reversed with direction to the trial court to amend its conclusions of law so as to order judgment for defendant.

Order reversed.

STONE, J. took no part in the consideration and decision of this case.