# VALENTI v. PRUDENTIAL INS. CO. OF AMERICA.

## No. 9751.

Circuit Court of Appeals, Eighth Circuit.

May 1, 1934.

Julius C. Shapiro, of Kansas City, Mo. (Frank Benanti and William Goodman, both of Kansas City, Mo., on the brief), for appellant.

Kenneth E. Midgley, of Kansas City, Mo. (William C. Michaels, Roy P. Swanson, and Albert L. Reeves, Jr., all of Kansas City, Mo., Ralph W. Hyatt, of Newark, N. J., and Meservey, Michaels, Blackmar, Newkirk & Eager, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

This is a suit in two counts to recover upon two policies of life insurance, commonly known as industrial insurance, issued by appellee to one Nicola Valenti, now deceased. The first policy, numbered 55,630,299, was issued under date October 23, 1922, stipulating as its premium a weekly payment of 20 cents, and the face amount of the insurance as $404. The second policy, numbered 62,-199,633, was issued under date December 29, 1924, providing for a weekly payment of 45 cents, and for a face amount of $603. As stated in the agreed statement of facts: "Under date of November 26, 1928, defendant issued an announcement by a circular styled 'Double Insurance for Death by Accidental Means' without increase in premium rate or extra cost in connection with all of its weekly premium industrial policies, announcing also in said circular that a similar provision would be included in its weekly premium industrial policies issued on and after December 10, 1928, without any increase in premium rate; that a copy of 'said circular is hereto attached, marked 'Exhibit C,' and made a part of this stipulation, for consideration in its entirety."

The circular in question contained, as a condition of the additional coverage for accidental death, the following provision: "Upon receipt of due proof that the insured after attainment of age 15 and prior to the attainment of age 70, has sustained bodily injury, solely through external, violent and accidental means, occurring after the date of the policy (but in no case prior to December 10, 1928) and resulting in the death of the insured within ninety days from the date of such bodily injury while the policy is in force, and while there is no default in the payment of premium, the company will pay in addition to any other sums due under the policy and subject to the provisions of the policy an accidental death benefit equal to the face amount of insurance stated in the policy less the amount of any disability benefit which has become payable under the policy on account of the same bodily injury." Valenti was between the ages specified.

The circular contained also the following condition: "Not only will this affect new policies issued from now on, but it also will be granted to existing industrial policies as to accidents, as defined, occurring on and after December 10, 1928, while the policies are in force. (Not granted on lapsed policies running under extended insurance or on paid-up policies issued to replace policies that have elapsed.)"

On or about March 13, 1931, at Kansas City, Missouri, Nicola (commonly called throughout record and briefs as "Nick") Valenti "sustained bodily injury solely through external, violent and accidental means, to-wit, gun-shot wounds inflicted by a third party unknown, which resulted immediately in his death." At the time of his death, no premiums had been paid upon said policies, or either of them, since June 16, 1930, and they were in effect only by virtue of statutory provisions applicable thereto whereby the insurance, to the face amount insured by said policies, was extended for respective terms expiring October 12, 1933, and June 1, 1934.

Nick Valenti left surviving him his father, Ben Valenti, and a son aged four years. October 10, 1931, Ben Valenti, as custodian of the minor son of Nick Valenti, and claiming to be "equitably entitled to the proceeds of the policies," brought suit against appellee in the circuit court of Jackson county, Missouri. In his petition he sought to recover, in addition to the face amount of the insur-

ance hereinabove and in the agreed statement of facts stated, a like amount for accidental death, together with 10 per cent. of the principal sum for vexatious delay and attorneys' fees aggregating $750.

The case was removed to the District Court for the Western District of Missouri because of diversity of citizenship. In both policies appellee agreed to pay the insurance therein specified "to the executors or administrators of the insured," or, at its option, "to any person appearing to said company to be equitably entitled to the same by reason of having incurred expenses on behalf of the insured for his or her burial." Accordingly, at the outset, appellee, conceiving itself to be liable for the face of the policies as set out in the statement of facts, in view of the allegations of Ben Valenti, as stated in his original petition, that he was the person, as father, who "has incurred the burial expenses of the deceased," tendered to Ben Valenti the sum of $1,070.54, being the said face amount of the policies, together with all paid-up additions thereto by reason of dividends which had accrued at that time. This tender was refused.

Thereafter Ben Valenti procured his appointment as administrator of the estate of Nick Valenti, deceased, and, upon application, was authorized to amend his petition by adding his name as such administrator as a party plaintiff, alleging that "plaintiff, in his personal and in his representative capacities, is the only person entitled to the proceeds of the policies of insurance sued on herein." This amendment, so authorized, was duly made by interlineation.

Appellee by its answer denied liability for the additional amount claimed for accidental death, and for any amount except the face amount of the policies with all paid-up additions thereto by reason of dividends, which it again tendered—this time to Ben Valenti as administrator, and in the sum of $1,076, computed to that date. This tender also was refused, and was paid into the registry of the court upon filing of the amended answer. In that answer appellee alleged, in view of the premises, that Ben Valenti, as an individual, had no capacity to maintain this action to recover the proceeds of the policies, and that appellee stood released by virtue of its tender to him as administrator.

At the trial a jury was waived, the court found the facts to be as stipulated by the parties in the agreed statement of facts filed in the case, and announced, among others, the following conclusions of law:

"1. Under the law and the facts stipulated by the parties hereto, and in view of the fact that the defendant has paid to the clerk of this court the sum of $1,076.00 under the provisions of its answer, the judgment must be for the defendant as to both counts of plaintiff's petition.

"2. There was no vexatious refusal to pay in this case on the part of the defendant.

"3. The amount of $1,076.00 paid by defendant to the clerk of this court is payable to Ben Valenti, administrator of the estate of Nick Valenti, deceased, and not to Ben Valenti in his individual capacity.

"4. The provision contained in the accidental death provision added to the policies here involved under date of December 10, 1928, to the effect that the accidental death provisions were applicable 'while the policy is in force and while there is no default in the payment of premiums' are valid and legal and a binding limitation upon the applicability of said provisions. The accidental death benefits under the policies were not payable on the date of the death of Nick Valenti because at that time there had been and remained default in the payment of premiums on each of said policies as to all premiums due on and after June 23, 1930, and said policies were at the time of the death of said Nick Valenti running under extended insurance."

Pending appeal, Ben Valenti died, and this appeal is prosecuted by appellant Lucille Valenti, as administratrix of the estate of Ben Valenti, deceased, and as administratrix of the estate of Nick Valenti, deceased. When the case was first submitted to this court, at the November term, 1933, appellant had presented no bill of exceptions, and applied for an order granting leave to file, nunc pro tunc, a supplemental transcript of the record. This application was granted and such supplemental transcript has been filed, containing an order and judgment setting out again the agreed statement of facts stipulated by counsel, which agreed statement was adopted and found by the trial court as the facts in the case, the court's conclusions of law, and conclusions of law requested by both parties at the close of the trial. This supplemental transcript, filed approximately one year after the entry of judgment in the District Court, is evidently intended to supply a bill of exceptions if such, upon the record, should be deemed necessary and proper. It is at least doubtful if this supplemental transcript can be made to discharge such a

function, and appellee moves to strike it from the files. In the view we take of the case, however, we find it unnecessary to dwell upon this phase of the controversy.

■ In a jury-waived case, where the facts have been agreed upon, the scope of appellate review is well settled.

Section 773, 28 USCA p. 447, provides:

"Issues of fact in civil cases in any district court may be tried and determined by the court, without the intervention of a jury, whenever the parties, or their attorneys of record, file with the clerk a stipulation in writing waiving a jury. The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

"And when the finding is special the review may extend to the determination of the sufficiency of the facts found to support the judgment." Section 875, 28 USCA p. 302.

The Supreme Court has held that:

"Where there was an agreed statement of facts submitted to the trial court and upon which its judgment was founded, such agreed statement would be taken as an equivalent of a special finding of facts. Wayne County Supervisors v. Kennicott, 103 U. S. 554, 26 L. Ed. 486. But as such equivalent, there must of course be a finding or an agreement upon all ultimate facts, and the statement must not merely present evidence from which such facts or any of them may be inferred." Wilson v. Merchants' Loan & Trust Co., 183 U. S. 121, 127, 22 S. Ct. 55, 58, 46 L. Ed. 113.

"The special finding contemplated by the statute is a specific statement of those ultimate facts upon which the law must determine the rights of the parties. It corresponds to the special verdict of a jury." United States v. Sioux City Stock Yards Co. (C. C. A. 8) 167 F. 126, 127; United States v. Smith (C. C. A. 1) 39 F. (2d) 851.

"An agreed statement of facts, on which judgment is rendered, consisting not of the ultimate facts, but of the evidence to be submitted to the court on the issues presented by the pleadings, is not the equivalent of a special finding of the facts, allowing review of their sufficiency." Kentucky Life & Acc. Ins. Co. v. Hamilton (C. C. A. 6) 63 F. 93.

But where the parties file an agreed statement of ultimate facts, or the court files special findings of ultimate facts, as distinguished from evidentiary facts, the sufficiency of such facts to support the judgment rendered presents a question of law reviewable on appeal. White v. United States (C. C. A. 10) 48 F. (2d) 178. The decision of this court in United States v. Federal Commerce Trust Company, 64 F. (2d) 679, is not in conflict with this view when the general language there used is restricted to a stipulation of evidentiary, as distinguished from ultimate facts. In the case before us the agreed statement stipulated was of the ultimate facts upon which the judgment was rendered, as conclusively appears from its eighteenth paragraph: "It is further stipulated that this agreed statement of facts together with the exhibits attached hereto and the pleadings herein incorporated by reference, shall be and constitute all the evidence in and shall be in lieu of any other or further evidence in the trial of this case, and that no other or further evidence will be offered by either party hereto, provided that if on the facts herein stipulated and the law applicable thereto, it appears there has been a vexatious refusal to pay the loss under said policies under section 5929, Revised Statutes of Missouri, 1929 [Mo. St. Ann. § 5929, p. 4515], evidence may be introduced upon what constitutes a reasonable attorneys' fee and allowance in this case."

We are, therefore, permitted in this review to determine whether these agreed facts support the judgment rendered. Substantially the main question thus presented is whether, under the terms of the policies of which the circular issued November 26, 1928, became a part, appellant is entitled to recover double indemnity because of the accidental death of the insured. The controlling statute is section 5741, R. S. Mo. 1929 (Mo. St. Ann. § 5741, p. 4388), being section 6151, R. S. Mo. 1919, as amended by the General Assembly of Missouri in 1923 (Laws 1923, p. 233). That part of the section to which our attention is invited reads thus: "No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state shall, after payment upon it of three or more annual payments, be forfeited or become void by reason of non-payment of premiums thereon, but it shall be subject to the following rules of commutation, to-wit: (from the net value of the policy certain deductions shall be made) the balance shall be taken as a net single premium for temporary insurance (extended insurance). The amount of such temporary insurance shall be such as is specified in the policy, but never less than the face amount insured by the policy * * *."

It thus becomes important to determine what is "the face amount insured by the poi-

icy." The face amount of the insurance, as stated in the policies, in the agreed statement of ultimate facts, and as found by the court, was $404 in one policy, and $603 in the second policy, to which must be added all paid-up additions thereto by reason of dividends which had accrued at the time of the death of the insured. The sum of $1,076 tendered by appellee with the filing of its answer and lodged in the registry of the court, responded to the computation in harmony with such agreed statement and findings.

Section 6151, before amendment, under the heading "Policies nonforfeitable, when," provided that no policies on life insurance should, after payment upon it of three annual payments, be forfeited or become void by reason of nonpayment of premiums, and that the net value of the policy at time of default should be computed in the manner therein provided with certain deductions, and that the balance resulting should be taken as a net single premium for temporary insurance for "the full amount written in the policy."

In New York Life Ins. Co. v. Rositzky, 45 F.(2d) 758, 762, this court had under consideration a life insurance policy for the principal sum of $5,000 for loss of life, with a provision for double indemnity if insured should meet death by accident, but with the further agreement that no part of the value of insurance at the time of lapse of premium should be applied to the purchase of such double indemnity. Insured met death by accident, while the policy was running upon temporary insurance, extended in accordance with the terms of the policy, and the provisions of the statute as hereinabove set out. It was held that this was a policy of insurance on life, and was within that nonforfeiture statute as to the entire amount of $10,000. In a previous decision, Great Southern Life Ins. Co. v. Jones, 35 F.(2d) 122, this court had reached a conclusion to the contrary upon a policy substantially identical in terms. This case was distinguished in New York Life Ins. Co. v. Rositzky, supra, upon the ground that the Oklahoma statute (Comp. St. 1921, § 6731), which controlled it, did not provide that the net value of the policy should be a premium to carry on the insurance "for the full amount written in the policy," nor "that the company in case of death during time of temporary insurance must pay as if there had been no default in payment of the premium, 'anything in the policy to the contrary notwithstanding,' as does the Missouri statute ([Rev. St. 1919] section 6153 [Mo. St. Ann. § 5743, p. 4394])."

It is clear that, in the absence of statutory limitation, parties to insurance contracts may contract for what risks the insurer may or may not be liable. Great Southern Life Ins. Co. v. Jones, supra; Kirkby v. Federal Life Ins. Co. (C. C. A. 6) 35 F.(2d) 126. And it is equally clear that, under the facts before us, appellee is not liable for double indemnity, absent controlling statutory provision to the contrary. That controlling statute is section 6151 as amended (now section 5741 R. S. Mo. 1929). Under the heading "Life insurance policies not to be forfeited or become void, when," it provides for the same rules of commutation as in the original statute, and provides that the balance arrived at "shall be taken as a net single premium for temporary insurance (extended insurance)." Then comes the significant change: "The amount of such temporary insurance shall be such as is specified in the policy, but never less than the face amount insured by the policy." It will be observed that section 5741 does not provide, as did the statute before amendment, that the net value of the policy shall be a premium to carry on the insurance "for the full amount written in the policy," and this leaves the parties free to stipulate as to the form of extended insurance, as this court held, in the Rositzky Case, could be done under the Oklahoma statute. Judge Otis, from whose decision in the District Court this appeal is taken, was likewise the trial judge in the Rositzky Case, and his judgment in the latter case was affirmed by this court. In his memorandum opinion in the case before us he says: "The reliance of the plaintiff in this case has been on the decision of the Court of Appeals for the Eighth Circuit in New York Life Insurance Company v. Rositzky, 45 F.(2d) 758, 760, and on the decision of this court in the same case. Clearly, however, there is a most significant distinction to be drawn between the applicable statute (section 6151, R. S. Mo. 1919) in the Rositzky Case and the applicable statute here. The statute in that case provided that the temporary or extended insurance should be 'for the full amount written in the policy.' The statute applicable here provides for temporary or extended insurance as fixed by the terms of the policy unless that amount shall be less than the face amount of the policy. I consider that the Rositzky Case is of no value in the decision of this case. The parties here are bound by the terms of the contract.

In no way are those terms inconsistent with any Missouri statute. They are not, therefore, made void by any such statute." 1 F. Supp. 993, 994.

The policies in terms specify the face amount of temporary or extended insurance, and provide that the temporary or extended insurance payable under the policies shall not include any accidental death benefits. The circular providing such accidental death benefits had become a part of the policies. When the whole contract, made up of the original policies and the circular, is read together, giving full effect to all its terms, it is seen that the face amount of the insurance at the time of decedent's death is the face values specified in the policies plus dividend additions subsequent to the date of lapse, and exclusive of accidental death benefits. Inasmuch as there was no increase of premium when the accidental death benefit was added, it was of increased importance that payment of that premium should be exacted, and that the application of such benefits should be limited accordingly.

In their criticism of the holding in the Rositzky Case, counsel for appellee in their brief have announced the following:

"The original non-forfeiture statutes in Missouri were enacted when 'life insurance companies' could only issue ordinary life policies or other insurance subject to be valued by mortality tables, and the language of the statutes must be read in light of that fact. The non-forfeiture statutes were intended to apply only to ordinary life or endowment insurance which has a net value.

"When the powers of life insurance companies were broadened in 1889 to permit them to insure against death by accident, it was done on condition that such insurance be made a separate department of the life insurance company's business, and the non-forfeiture statutes were not broadened to apply to accidental death insurance."

It is stated that the Missouri state courts have never held that accidental death benefits are carried on extended insurance. A number of decisions from other states are cited in support of these views. Orr v. Prudential Ins. Co., 274 Mass. 212, 174 N. E. 204, 72 A. L. R. 872; Inter-Southern Life Ins. Co. v. Omer, 238 Ky. 790, 38 S.W.(2d) 931; Johnson v. Central Life Assurance Society, 187 Minn. 611, 246 N. W. 354; Johnson v. Royal Union Life Ins. Co., 187 Minn. 621, 246 N. W. 358. Of course, decisions in individual cases must necessarily vary with the provisions of the statutes by which such cases are governed.

The following additional observations are pertinent with respect to accident coverture grafted upon ordinary life policies: This court, in Mutual Reserve Life Insurance Co. v. Roth, 122 F. 853, commenting upon a similar Missouri non-forfeiture statute, held: "Rev. St. Mo. 1879, § 5983, which provides that no life insurance policy on which two full annual premiums have been paid shall become forfeited by reason of the nonpayment of premium thereon, but that in such case three-fourths of the net value of the policy, less any indebtedness of the holder, shall be applied as a single premium to extend the insurance, was enacted with special reference to that class of policies termed 'ordinary life' or 'endowment,' where the premium remains fixed or level during the lifetime of the insured, or so long as premiums are payable, which gives such policies an actual net value after the payment of a few premiums; and it cannot be applied to policies or benefit certificates issued on the assessment or natural premium plan, on which the assessments are limited to such sum as is necessary to cover the actual cost of insurance from one renewal period to another, and which therefore have no accumulated or actual net value."

And further, speaking of such nonforfeiture statute, the opinion says: "It (the statute) was framed, we think, on the assumption that the premiums on ordinary life and endowment policies are fixed at a rate which gives them an actual net value, or a reserve after the payment of a few annual premiums."

This distinction we think holds good in the instant case. In ordinary life insurance agreements, where the insurance is against death from whatsoever cause, the expectancy of the insured is determined by mortality tables and interest rate, and a reserve is built up behind the premium charged, so that a fund may be accumulated for the payment of the loss when the expectancy is reached, and a value for extended insurance in case of default after the payment of a prescribed number of premium payments. Not so with accident insurance which is without any reserve or net value built up to meet each particular loss. While under R. S. Mo. 1889, art. 2, c. 89, § 5811, life insurance companies were permitted to include an indemnity against death by accident, it was expressly provided that "such accident insurance shall be made

a separate department of the business of the life insurance company undertaking it." It is, therefore, inferable that some part of the premium exacted must be allocated to the accident department, as of the nature of term insurance; otherwise, in the absence of reserve, the insurer has no protection against the potential loss. It is pointed out by counsel for appellee that the subject matter of the suicide statutes, so called, can be applied to any and all policies of life insurance. Suicide is not an accident in the sense employed in insurance classification; and cases bringing suicide within the provisions of nonforfeiture statutes have no necessary application to accident insurance, even though the accident indemnity, with qualification, be included in an ordinary life insurance policy. These considerations emphasize the reasonableness and importance of the express qualification in the circular that the indemnity for accidental death should apply only when there is no default in premium. We fully concede that the character of the covenants of a contract for life insurance depends upon the statutory law of the state where made. American Surety Co. v. Bankers' Savings & Loan Association (C. C. A. 8) 67 F.(2d) 803. But policy contracts of this serious nature should not be impaired unless the plain wording of the statute, properly construed, so compels.

It is also pointed out that the circular granting accidental death benefits was issued November 26, 1928, and became a part of the policies in suit as of that date. Premiums were paid only until June 16, 1930, or for a period, approximately, of but one year and six months after the policies contained the accidental death feature. It is therefore urged that, for this additional reason, the nonforfeiture statutes are not applicable to such accidental death benefits. While this proposition is not without force, we deem it unnecessary to give it more extended consideration in the decision of this appeal.

The recovery under the facts in this case properly accrued to Ben Valenti, administrator of the estate of Nick Valenti, deceased, and not to Ben Valenti in his individual capacity.

For the reasons herein stated the judgment below should be affirmed, and it is so ordered.

GARDNER, Circuit Judge, concurs in the result.