[L. A. No. 15793. In Bank.—October 30, 1936.]

EDYTHE H. HENRICKS, Respondent, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Appellant.

620

Loeb, Walker & Loeb and Herman F. Selvin for Appellant.

Meserve, Mumper, Hughes & Robertson, E. Avery Crary, F. Elred Boland, Knight, Boland & Riordan, J. W. Radil, Newlin & Ashburn, Paul Sandmeyer and George W. Tackabury as *Amici Curiae* on Behalf of Appellant.

Black, Hammack & Black and J. T. Enright for Respondent.

THE COURT.—Plaintiff, as the named beneficiary, brought this action to recover on a life insurance policy

issued by defendant on the life of her husband, Noah Henricks.

The basic facts are not in dispute, having been stipulated to by the parties, and are as follows:

On May 19, 1924, the defendant issued a policy of life insurance upon the life of Noah Henricks, a California resident, in the sum of $2,500. In consideration of an additional premium of $2 per year there was attached to this policy a supplementary contract providing that if the insured died by accidental means as defined in the policy, an additional amount in the sum of $2,500 would be paid to the beneficiary. The premiums on the policy were paid by the insured up to February 19, 1932. The premium due on that date was not paid, nor were any further premiums ever paid. On May 8, 1932, the insured was drowned under such circumstances that defendant concedes that if the double indemnity provision was still in effect, the death was accidental within its terms. At the time the policy lapsed by reason of nonpayment of premiums, it had a reserve value of $303.75. Prior to the date of the lapse, however, the insured had borrowed certain sums from defendant against the policy, which sums, together with interest, totaled $270.15. On February 19, 1932, the policy, therefore, had a net reserve value of $33.60. The policy contained certain alternatives, to be exercised at the election of the owner thereof, as to what should be done with this reserve. After due proof of death, on May 19, 1932, plaintiff, as the owner of the policy, delivered to the defendant the policy of insurance, together with a formal notice that she elected to receive for this reserve "term insurance from due date of premium now in default to the full extent permissible and purchasable with moneys now due under said policy by reason of surrender or loan values", in accordance with one of the alternatives contained in the policy. Because of certain limitations in the policy applicable to policy holders who were also borrowers, and hereafter discussed more fully, the amount due plaintiff under the option exercised by her, exclusive of double indemnity, was $277. This sum was tendered by defendant, but refused. It is plaintiff's theory that under the terms of section 450 of the Civil Code (now sections 10151–4 of

the Insurance Code) she is entitled to term insurance for the full face of the policy, plus double indemnity in the same amount. The trial court rendered its judgment in favor of plaintiff in the sum of $5,000, from which judgment this appeal has been perfected. The decision of the trial court, as disclosed in its findings and conclusions, as well as in a written opinion, was based upon two main theories. In the first place, the trial court held that in order to be valid every life insurance policy made upon the life of a resident of this state, and delivered within this state, must provide, that in the event of lapse by reason of nonpayment of premiums, the owner of the policy shall have all three of the alternatives provided in section 450 of the Civil Code; that inasmuch as the policy here involved contained at most but one of those alternatives, its nonforfeiture provisions were void and the automatic provision of section 450 was applicable—i. e., "term insurance in the amount of the face of the policy". The trial court found, in the second place, that the double indemnity supplementary policy was a life insurance policy within the meaning of section 450, and that its provisions in reference to nonforfeiture in the event of lapse were applicable to it.

Before the contentions of the parties can be adequately understood it is necessary to refer to the nonforfeiture provisions of the policy, and to the provisions of the code section in question.

The policy provides that in the event premiums are not paid by the insured when due certain options are available to the owner of the policy. The language of the policy, in this regard, is as follows:

"Options on Surrender or Lapse:—Upon failure to pay any premium or any part thereof when due, this Policy, except as otherwise provided herein, shall immediately lapse. If, however, the lapse occur after three full years' premiums shall have been paid, the owner hereof, provided there be no indebtedness hereon, shall, upon written request filed with the Company at its Home Office together with the presentation of this Policy for legal surrender or for endorsement within three months from the due date of premium in default, be entitled to one of the following options:

"First—A cash surrender value.

"The Company in its discretion may defer the payment of the cash value for a period not exceeding ninety days after the application therefor is received by the Company.

"Second—To have the insurance continued for a reduced amount of non-participating paid-up insurance (including any existing additions to the credit of the Policy), payable at the same time and under the same conditions as this Policy. Such paid-up insurance shall have an increasing cash surrender value equal to the full reserve at the date of surrender, or a loan value up to the limit of the cash surrender value. Interest on loan under such paid-up insurance shall be payable annually in advance to the end of the policy year at the rate of six per centum per annum.

"Third—To have the insurance continued for its original amount as term insurance in whole number of months from due date of premium in default, without participation and without the right to loan, but with a cash surrender value decreasing each year and ceasing entirely upon the expiry of the extension term, which value shall be the full reserve in even dollars for each one thousand dollars of insurance at the date of surrender.

"If the owner shall not, within three months from the date of premium default, surrender this Policy to the Company at its Home Office for a cash surrender value or for endorsement for paid-up insurance or term insurance as provided in the above options, the policy shall be continued for a reduced amount of paid-up insurance as provided in the second option.

"The values of these options are mathematical equivalents, and have been calculated on the basis of the Metropolitan Intermediate Table of Mortality, as adopted by the Insurance Department of the State of New York for computing reserves hereunder, with interest at three and one-half per centum per annum (omitting fractions of a dollar per thousand of insurance) less a surrender charge not exceeding in any case two and one-half per centum of the face of the Policy; except that after the time for which premiums are payable as stated on the first page hereof, no surrender charge has been made. These values as computed produce the results set forth in the table herein at the end of the respective years. Values for other years (after the twentieth) will be computed upon the same basis

for the entire reserve in even dollars, for each one thousand dollars of insurance, and for even months in the event of election of term insurance, and will be furnished upon request of the Insured.

"Any indebtedness to the Company under this Policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance in such proportion as the indebtedness bears to the cash value at due date of premium in default.

"The reserve for which funds are to be held upon this Policy shall be computed upon the Metropolitan Intermediate Mortality Table (as adopted by the Insurance Department of the State of New York), with interest at three and one-half per centum per annum."

Section 450 of the Civil Code reads in part as follows:

"Every contract or policy of life insurance hereinafter made by any person or corporation, with and upon the life of a resident of this state, and delivered within this state, shall provide, in event of default of any premium payment after three full annual premiums shall have been paid on such policy, that without any action on the part of the insured, the net value of such policy based upon the reserve basis used in computing the premiums and values thereunder (the policy to specify the mortality table and rate of interest so adopted) which net value shall be at least equal to its entire net reserve at the date of default, including that of dividend additions, if any, based upon a standard not lower than the American experience tables of mortality with interest at three and one-half per cent yearly, less a surrender charge of not more than two and one-half per cent of the face amount of the policy and of any existing dividend additions thereto and less any indebtedness to the company on or secured by the policy, shall be applied as a single premium to the purchase of one of the following stipulated forms of insurance:

"First—*Paid-up nonparticipating term insurance in the amount of the face of the policy,* plus dividend additions, if any, for such a period as the net value outlined above will purchase at the net single premium, at the attained age of the insured at the time of the lapse, based upon the reserve basis described in the policy; provided, however,

that under endowment contracts the term shall not extend beyond the endowment period named in the original contract, and the excess value, if any, shall be applied as a net single premium to purchase in the same manner paid-up pure endowment insurance, payable at the end of the endowment period named in the contract if the insured be then living or,

"Second—*Paid-up nonparticipating term insurance in the amount of the face of the policy,* plus dividend additions, if any, and less any outstanding indebtedness, for such a period as the net value outlined above will purchase at the net single premium, at the attained age of the insured, based upon the reserve basis described in the policy; provided, however, that under endowment contracts the term shall not extend beyond the endowment period named in the original contract, and the excess value, if any, shall be applied as a net single premium to purchase in the same manner paid-up pure endowment insurance, payable at the end of the endowment period named in the contract if the insured be then living, or,

"Third—*Paid-up nonparticipating insurance payable at the time and on the conditions* named in the policy for such an amount as the net value outlined above will purchase at the net single premium, at the attained age of the insured, based upon the reserve basis described in the policy.

"*Provided, however, that the policy may be surrendered to the company,* at its home office, upon due application by the legal owner thereof, within one month after date of premium default, for a specified cash value which shall be at least equal to the sum which would be otherwise available for the purchase of the automatic form of insurance provided therein; and provided, further, that the company may defer payment of such cash value for not more than six months after application therefor is made.

"*No agreement between the company and the policyholder* or applicant for insurance contrary to the foregoing shall be held to waive any of the provisions provided above.

"*Nonforfeiture value.* Any life insurance policy issued upon the life of a resident of this state, and delivered within this state, which does not contain an automatic nonforfeiture value in conformity with the foregoing shall be construed as granting nonparticipating term insurance, as

provided in paragraph first of this section, and such a benefit shall be read into the contract."

The first question to be determined, under the provisions of the policy and the terms of the statute above quoted, is whether the nonforfeiture provisions of the policy are valid. The question presented in reference to the double indemnity provisions of the policy will be reserved for discussion later in this opinion.

■ If the alternatives provided in the policy are void, because of failure to comply with section 450, then under the terms of the code section paragraph First thereof is applicable. Under this statutory provision the net reserve —$33.60—should be applied to the purchase of "paid-up nonparticipating term insurance in the amount of the face of the policy". It was stipulated that on February 19, 1932, the date of lapse, $33.60 would buy at the insured's then age, $2,500 of this type of insurance for a period of 1 year and 11 months—a period beyond the death of the insured. If the terms of the statute are applicable, it follows that on this branch of the case, the respondent is entitled to $2,500. On the other hand, if the nonforfeiture provisions of the policy are valid then, under the alternative selected by the beneficiary,—number 3 of the policy—because of the provision in reference to the reduction of the face of the policy in proportion to existing debts, on the date of default, the $33.60 net reserve value would purchase $277 of paid-up nonparticipating term insurance for a term of 17 years, 3 months and 15 days.

As already indicated, the first question presented is, whether, under the terms of section 450 of the Civil Code, quoted *supra,* all policies of life insurance issued on the lives of California residents, and delivered in this state, must contain all three of the alternatives found in that section. The solution of this problem obviously turns upon the language of that section, interpreted in view of its purpose and intent. The section has apparently never been finally interpreted in this regard by any of the appellate courts in this state.

There is no difficulty presented in ascertaining the purpose of statutes such as section 450. Life insurance policies are commonly issued on a level premium basis—i. e., on such a basis that the premium paid by the insured remains

the same during the premium paying term of the policy. Obviously, the premiums charged in the early years are more than sufficient to meet the anticipated mortality loss for those years. During the early years of the policy a surplus exists in the fund created by the payment of premiums, which in the later years of the policy takes care of the anticipated increased mortality losses in those years. This surplus thus created during the early years of the policy, is the reserve. (*Williams* v. *Union Central Life Ins. Co.,* 291 U. S. 170 [54 Sup. Ct. 348, 78 L. Ed. 711, 92 A. L. R. 693]; *Federal Life Ins. Co.* v. *Kemp,* 257 Fed. 265.) When a policy lapses by reason of nonpayment of premium, if a complete forfeiture resulted, the insured would be deprived of this reserve. To prevent such a forfeiture, the states, by various types of statutes, of which section 450 is an illustration, have provided that this reserve must be applied by the insurance company in some way beneficial to the insured. This reserve could obviously be applied in any one of a number of ways—i. e., by direct payment of the net cash surrender value to the insured, or by the purchase of any one of several kinds of fully paid-up insurance. Because of these various possibilities the statutes of the several states differ radically. All of the statutes recognize that what was to be done with this reserve could not be made to depend solely upon the election of the owner of the policy, because, after the nonpayment of premiums many insured took or would take no action at all to exercise their option. To protect such policyholders, the statutes quite uniformly have provided (as does section 450) that in the event of nonaction on the part of the insured, or other owner of the policy, the reserve must be applied to the purchase of a specified type of insurance—so called automatic nonforfeiture clauses. In order to permit each insurance company to adopt a nonforfeiture provision best suited to its method of doing business, many statutes listed several alternatives, all mathematical equivalents, and permitted the insurance companies to specify any one of these alternatives as the automatic nonforfeiture provision for its policies. (*Mutual Reserve Life Ins. Co.* v. *Roth,* 122 Fed. 853.)

Section 450 of the Civil Code is plainly a nonforfeiture statute. Its obvious purpose is to prevent the loss of the

reserve to the insured in the event of nonaction on his part. To carry out this purpose, the section provides that in addition to the cash surrender value every "policy of life insurance . . . shall provide, in event of default of any premium payment after three full annual premiums shall have been paid on such policy, that without any action on the part of the insured, the net value of such policy . . . less any indebtedness to the company . . . *shall be applied as a single premium to the purchase of one* of the following stipulated forms of insurance" and then lists three alternatives. The section then provides that it is only when the policy "does not contain *an automatic nonforfeiture value* in conformity with the foregoing" that the first alternative in the statute "shall be read into the contract". When the statute is read fairly in its entirety, and when due consideration is given its purpose and intent, it is susceptible of but one reasonable interpretation, and that is that when a policy contains any one of the three alternatives set forth in the statute, and that alternative is made automatically operative in the event of nonaction on the part of the insured, the policy complies with the statute.

Respondent relies upon *Metcalf* v. *Metropolitan Life Ins. Co.*, 1 Cal. App. (2d) 481 [37 Pac. (2d) 115, 38 Pac. (2d) 401], as establishing a contrary construction. In that case the appellate court, by way of *dicta*, did pass upon the interpretation of section 450, and did hold that all three alternatives contained in the statute must be inserted in policies delivered in this state on the lives of residents of this state. In denying a hearing in that case this court stated (1 Cal. App. (2d) 492): "The petition is denied. In denying said petition, we withhold our approval of that portion of said opinion relating to section 450 of the Civil Code." The question here presented was expressly left open for future determination.

Respondent also relies upon *Eddie* v. *New York Life Ins. Co.*, 75 Cal. App. 199 [242 Pac. 501]. A reading of that case clearly demonstrates that the point here under consideration was not even remotely involved. The inadvertent use of the plural form in that opinion, in incidentally referring to what is required by section 450, cannot be held to be a determination of that question.

The only other case in which section 450 has been interpreted in reference to the problem here presented in *Maggiorini* v. *New York Life Ins. Co.*, 9 Fed. Supp. 630, a decision of the District Court, Northern District of California. In that case the federal court held that section 450 only requires that one of its three alternatives be included in life policies issued in this state. We have been informed that the above decision is not final, the causes having been appealed to the Circuit Court of Appeals. However, we are in accord with the conclusion therein reached.

After having concluded that life policies issued in this state need provide for only one of the automatic nonforfeiture alternatives set forth in section 450, the problem still remains as to whether the policy here involved does provide for one of the statutory alternatives.

It is appellant's contention that alternative number 2 in the policy, is identical with alternative number 3 of the statute—that is, that in the absence of an .election by the insured, the reserve must be applied to the purchase of paid-up nonparticipating insurance. It is respondent's position that alternative number 2 in the policy differs from alternative number 3 in the statute, and that therefore the policy does not contain one of the alternatives set forth in section 450.

It is true that the option in the policy is couched in somewhat different language from that found in the statute. This is particularly true in reference to the language used in the policy and in the statute in describing the effect of existing debts. Thus the policy provides that as far as alternative number 2 is concerned, the amount of paid-up insurance, in the event there is an outstanding debt, shall be reduced "in such proportion as the indebtedness bears to the cash value at due date of premium in default". Section 450, in dealing with the same subject, makes allowance for existing debts by deducting them from the reserve value, and applies the balance as a single net premium to the purchase of paid-up insurance. Different formulae are thus provided in the statute and the policy, but it is a matter of elementary mathematics, that both formulae reach identically the same result. Certainly it cannot be held that the statute requires its exact language to be embodied in the policy. As long as the language used

in the policy accomplishes identically the same result required by the statute, there is a sufficient compliance with the statute. As a matter of fact, the policy provision in reference to alternative number 2 apparently gives the policyholder greater rights than is required by alternative number 3 in the statute—that is, the policy gives the owner thereof certain privileges in reference to loan and surrender values apparently not granted by the statute. Certainly a policyholder will not be heard to complain that it is unlawful for the company to confer upon him greater rights than those required by the statute.

■ Respondent also contends that the nonforfeiture provisions of the policy are conditioned on the absence of indebtedness, and therefore do not comply with the statute. This contention is without merit. It is based upon a strained and unnatural construction of the policy provisions. The policy, as above quoted, in the first paragraph of its nonforfeiture provisions, gives the owner thereof certain options "provided there be no indebtedness hereon". If this were the only language in the policy referring to the effect of an existing indebtedness, we would agree with respondent that, since the statute does not provide that the existence of indebtedness shall prevent one of ifs three alternatives from automatically taking effect on lapse, a policy so providing does not comply with its terms. However, the policy is explicit as to the effect of an existing indebtedness. After providing for the three alternatives above quoted the policy provides: "Any indebtedness to the company under this Policy will be deducted from the cash value; and such indebtedness will also reduce the amount of paid-up insurance or the amount continued as term insurance in such proportion as the indebtedness bears to the cash value at due date of premium in default." This provision, as we have already held, in so far as it affects the purchase of fully paid-up insurance is in exact accord with the statute. ■ We are not unmindful of the rule that insurance policies should be liberally construed in favor of the insured (*Pacific Heating & Ventilating Co.* v. *Williamsburgh City Fire Ins. Co.*, 158 Cal. 367 [111 Pac. 4], but that rule of construction does not permit the giving effect to one sentence of a policy and the complete ignoring of an. entire paragraph dealing with the same subject-matter. (*Ogburn*

v. *Travelers Ins. Co.*, 207 Cal. 50 [276 Pac. 1004]; *Williams* v. *Union Central Life Ins. Co.*, 291 U. S. 170 [54 Sup. Ct. 348, 78 L. Ed. 711, 92 A. L. R. 693].) In the present case it cannot be held that the nonforfeiture provisions of the policy are conditioned on the absence of indebtedness— the policy expressly declares to the contrary.

From what has already been said, it follows that since section 450 does not require that all three of the alternatives therein contained must be inserted in every life policy issued in this state, but only requires that one of its alternatives be operative in the event of nonaction on the part of the insured, a policy containing one such automatic nonforfeiture provision may contain other alternatives different from those in the statute operative only upon the election of the owner of the policy. Section 450 only prohibits contracts "contrary" to its provisions, and does not prohibit alternatives in addition or different from those required by the statute.

Respondent concedes that by formal notice served on the company she elected to accept alternative number 3 in the policy. She further concedes that under this alternative, as limited by the terms of the policy, she is entitled to but $277 term insurance. However, she contends that this alternative in the policy is invalid because in so far as borrowing policyholders are concerned, it provides for a different result than is provided in the statute. This is undoubtedly true. The company has seen fit to provide that in the absence of action on the part of the owner of a policy, one of the alternatives provided in section 450 shall automatically go into effect, but if the owner elects, other alternatives not found in the statute are provided. These alternatives are purely optional. In the present case the owner of the policy, respondent here, elected to take advantage of one of these elective options, and formally notified the company of that fact. Under this alternative she is entitled to $277. That she selected wisely is shown by the fact that had she done nothing, the automatic provision of the policy would have gone into effect, in which event she would have been entitled to paid-up insurance in the sum of but $94. Respondent relies on *Gooch* v. *Metropolitan Life Ins. Co.*, 334 Mo. 191 [61 S. W. (2d) 704], and *Trapp* v. *Metropolitan Life Ins. Co.*, 70 Fed. (2d)

976, as establishing that the alternative number 3 in the policy selected by her is invalid. Those two cases, in interpreting the identical provision here involved, did hold the provision invalid, but this conclusion was based upon the peculiar language of the Missouri statute there under consideration, language which is quite different from that found in section 450. The fallacy in respondent's position is that if the alternative voluntarily selected by her is invalid, then the automatic provision of the policy is applicable, and under this provision she would receive less than she will receive under the option selected.

 Respondent makes one other contention on this phase of the case that requires discussion, and that is that the alternative selected by her—alternative number 3 in the policy—unlawfully discriminates between borrowing and nonborrowing policyholders. We agree with respondent that the company has seen fit to treat borrowers and nonborrowers differently under alternative number 3 contained in the policy. That this is so can be easily demonstrated. Thus, if a nonborrower of the age of Henricks has a $2,500 life policy, and defaults in the payment of premiums, and at the time of default has a reserve of $33.60, and elects to accept alternative number 3, he would be entitled to term insurance in the full sum of $2,500 for one year and eleven months. Henricks had exactly this same net reserve. His gross reserve was $303.75, but after deducting his indebtedness, plus interest, the net reserve was $33.60. Because of the provision of the policy in reference to the effect of indebtedness, under alternative number 3, he is not entitled to term insurance for the short period for the full amount of the policy, but only entitled to term insurance for $277 for a term of 17 years, 3 months and 15 days. Of course, in this particular case, since the insured died within several months of his failure to pay premiums, it would be more beneficial to the beneficiary to accept the shorter term and the higher amount, but in many cases where the insured lives for some years after his default the contrary would be true. Why the insurance company has seen fit to treat two policyholders with identically the same reserve in this different fashion is not apparent, but we are of the opinion that such difference in treatment is not unlawful. Respondent cites *Metropolitan Life Ins.*

*Co.* v. *Lillard*, 118 Okl. 196 [248 Pac. 841], *Ringstad* v. *Metropolitan Life Ins. Co.*, 182 Wash. 550 [47 Pac. (2d) 1045], and *Jeske* v. *Metropolitan Life Ins. Co.*, 113 Pa. Super. 118 [172 Atl. 172], as sustaining her position that such difference in treatment constitutes unlawful discrimination between policyholders. The reasoning found in these three cases is not persuasive. The Jeske case, *supra*, has recently (May 25, 1936) been expressly overruled on this very point by the Supreme Court of Pennsylvania in *Steuernagel* v. *Metropolitan Life Ins. Co.*, 322 Pa. 289 [185 Atl. 208]. The Pennsylvania court cites many authorities to sustain its contention that such difference in treatment does not constitute unlawful discrimination—see particularly *Neal* v. *Columbian Mutual Life Assur. Soc.*, 161 Miss 814 [138 So. 353]; *Pilot Life Ins. Co.* v. *Owen*, 31 Fed. (2d) 862. The Washington and Oklahoma cases cited, *supra*, are not in point for the reason that they were decided under so-called discrimination statutes of those states which have no counterpart in this state. In the absence of such a statute, the following quotation from the Steuernagel case, *supra*, correctly sets forth our views on this subject (185 Atl., at p. 212):

"There may, of course, not be discrimination between policyholders of the same class, see Act of 1931, P. L. 904, 912, section 2, 40 P. S., section 477a, but the insured in this case was in the same class with all other borrowing policyholders; he was not in the class of nonborrowers; there is nothing to indicate that he was accorded different treatment than other borrowers. By borrowing, he selected the class. Having entered that class, he cannot demand settlement on the basis by which members of another class —nonborrowing members—would be entitled, because he took himself out of that class."

That the alleged discrimination is not unlawful is also demonstrated by the fact that in this particular case, had the respondent seen fit to repay the loan as provided in the policy, she could have reinstated the policy in the class of nonborrowers, and thus have been entitled to term insurance in the full amount of the policy. (*Metcalf* v. *Metropolitan Life Ins. Co.*, *supra*.) This, respondent did not see fit to do, and she must therefore be held bound by her own election.

In the instant case the trial court also awarded to the beneficiary $2,500 by reason of the insured's accidental death. ▮ The trial court held that double indemnity was payable, even though premiums were in default, and the policy was in effect only by reason of its nonforfeiture provisions. We are of the opinion that this was error.

In the first place, the policy expressly provided that double indemnity was payable only in certain enumerated conditions—1. That the death was accidental as defined in the policy; ''2. that all premiums under said policy and this Supplementary Contract shall have been duly paid; and 3. that said policy shall not then be in force by virtue of any nonforfeiture provisions thereof.'' The policy is therefore explicit that the accidental death benefit was payable only if all premiums had been paid and if the policy was not in force by reason of its nonforfeiture provisions. The theory upon which the language of the policy was thus disregarded was that the supplementary contract was a part of an ordinary life policy, and that therefore the nonforfeiture values prescribed· by section 450 applied to the aggregate amount of insurance.

We agree with respondent that the so-called supplementary contract was part and parcel of the life insurance policy, but that factor alone is not decisive. The premium for the double indemnity addition was $2 per year, and it is a stipulated fact that no additional reserves were carried over year to year to meet this risk. This is necessarily so because the premium for accidental death takes care of the risk for that year, and leaves no surplus. The risk of death by accidental means is no greater in the later years of the policy than it is in the early years. There is therefore no reserve to be credited to the insured upon lapse. The great weight of authority is in accord with the view that double indemnity benefits are not carried over to nonforfeiture insurance. (*Inter-Southern Life Ins. Co.* v. *Omer*, 238 Ky. 790 [38 S. W. (2d) 931]; *Johnson* v. *Central Life Assur. Soc.*, 187 Minn. 611 [246 N. W. 354, 91 A. L. R. 1058]; *Orr* v. *Prudential Ins. Co.*, 274 Mass. 212 [174 N. E. 204, 72 A. L. R. 872]; *Great Southern Life Ins. Co.* v. *Jones*, 35 Fed. (2d) 122; *Yarborough* v. *Atlantic Life Ins. Co.*, 84 Fed. (2d) 319; *Valenti* v. *Prudential Ins. Co.*, 71 Fed. (2d) 229.) The last-named case is of particular

importance because it distinguishes *New York Life Ins. Co.* v. *Rositzky,* 45 Fed. (2d) 758, relied upon by respondent. The reasoning and authorities cited in the above cases are convincing that the clause "amount of the face of the policy" appearing in section 450 means the amount of the policy without including double indemnity.

From what has been said it is obvious that respondent is entitled to but $277, plus interest to the date of tender.

The findings, conclusions and judgment are modified in accordance with the views herein expressed.

As so modified the judgment is affirmed, both sides to bear their own costs on this appeal.

Rehearing denied.