ALBERTA E. SMITH AND GALENA SMITH, APPELLANTS, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, RESPONDENT.—107 S. W. (2d) 191.

St. Louis Court of Appeals. Opinion filed June 29, 1937.

*Arthur Kreisman, Edgar & Matthes* and *Robert L. Aronson* for appellants.

*Rassieur & Rassieur* and *Alfred C. Wilson* for respondent.

BENNICK, C.—This case, which comes to the writer on reassignment, is an action for the sum of $1000 which is alleged to be due as double indemnity under a certain policy of life insurance issued by defendant, The Equitable Life Assurance Society of the United States, upon the life of one Percy P. Smith. Plaintiffs sue in the capacity of the beneficiaries under the policy.

The case was heard by the court alone upon an agreed statement of facts; and from a judgment rendered in defendant's favor, plaintiffs have duly prosecuted their appeal to this court.

The case involves the question of whether, after the lapse of the policy for nonpayment of premium, the double indemnity coverage was included within the "face amount" of the policy which was thereafter continued in force as paid-up extended term insurance for a period extending beyond the date of the death of the insured.

In the upper right-hand corner of the policy the "face amount" of the same was stated to be the sum of $1000.

By the insuring clause, defendant agreed to pay the beneficiaries the said sum of $1000, the "face" of the policy, upon due proof of the death of the insured, provided premiums had been duly paid and the policy was then in force; and in the event of death from accident, defendant agreed "to increase the amount so payable" to the sum of $2000.

Provision was made for the payment of premiums in advance in quarterly installments; and included in each of such quarterly installments was a definitely fixed premium for the double indemnity coverage provided by the policy.

Elsewhere in the policy appeared the following provision relative to the options available to the insured in the event of the surrender or lapse of his policy:

"After three full years' premiums have been paid hereon, upon any subsequent default in the payment of any premium or installment thereof, and within three months after such default, this policy may be surrendered by the Insured (or assignee if any) who may elect one of the following options:"

Options (a) and (b), providing, respectively, for the payment to the insured of the cash surrender value of his policy, or the purchase by him of non-participating paid-up life insurance payable at same time and on the same conditions as the policy, are not pertinent to the case at hand, unless, upon the question of the meaning of the

contract, it might be of importance to note that in the event of the insurer's exercise of Option (b), it was provided that the amount of the non-participating paid-up life insurance which might be purchased would be "without double indemnity."

Then followed Option (c), which was as follows:

"To continue the insurance for its face amount (and any outstanding dividend additions) as paid-up extended term insurance for the period shown in the opposite Table, or for such further period as the dividend additions (if any) will purchase, but without future participation, or right to loans, *or double indemnity* or total and permanent disability benefits. (Emphasis ours.)

"In the event of default in the payment of any premium or installment thereof after this policy has been in force three full years, if the Insured (or assignee if any) does not select one of said options within three months of such default, the insurance shall be continued as provided under Option (c)."

Opposite Option (c) appeared the table referred to therein, which was so prepared as to show, among other things, the number of years and months the policy should be continued as paid-up extended term insurance "without double indemnity" after the policy had been in force for any given period of years short of maturity.

The policy was issued by defendant on April 17, 1926. Thereafter the insured paid all the quarterly premiums as they fell due until the time of the accrual of the premium of January 17, 1930, when he allowed his policy to lapse. The same was never reinstated, and neither of the options having been exercised by the insured, at the expiration of the three months after default the policy was automatically continued under Option (c) "for its face amount . . . as paid-up extended term insurance" for a period terminating on March 16, 1939.

Under defendant's construction of the policy, as evidenced by its letter to the insured of April 17, 1930, the amount of the paid-up extended term insurance which was continued in force was the sum of $1045, representing what it regarded as the "face amount" of the policy, together with an outstanding dividend addition of $45.

On December 2, 1933, which was at a time well within the extended term of the policy, the insured came to his death by accident, or, in other words, under circumstances which it is conceded brought the case within the double indemnity coverage of the policy, if such provision may be said to have been continued in force and effect, as plaintiffs claim, by virtue of the automatic application of Option (c) after the policy had been allowed to lapse for the nonpayment of premium.

Upon receipt of due proof of the death of the insured, defendant promptly paid plaintiffs the sum of $1045 as the single indemnity benefit provided by the policy, but declined and refused to pay the

double indemnity benefit upon the theory that under the terms of the policy, such additional sum of $1000 was not included in the "face amount" of the policy, which, upon the automatic application of Option (c) was continued as paid-up extended term insurance.

Thus the case narrows itself down to the point where, as stated by the parties themselves in their agreed statement of facts, "the only question for decision by the court in this case is whether or not, under the facts herein agreed upon, and under the provisions of said policy and the laws of the State of Missouri applicable thereto, the defendant is liable for double indemnity because of the accidental death of said Percy P. Smith; if so, the plaintiffs are entitled to recover; if not, the judgment should be for the defendant."

We think it may be safely said that the policy in suit is not ambiguous so as to warrant the application of the doctrine that all ambiguities are to be resolved in favor of the insured. It plainly provides that the "face" of the policy is the sum of $1000, which sum the company agrees to pay to the designated beneficiary upon receipt of due proof of the death of the insured, regardless of the cause of death, provided premiums have been duly paid and the policy is then in force; it then follows with an additional or special provision that in the event of death from accident the company will "increase the amount so payable" to $2000; and it finally provides that upon the lapse of the policy for nonpayment of any premium, the company will continue the insurance for its "face amount" as paid-up extended term insurance, "but without . . . double indemnity."

With the policy so providing in clear and unmistakable fashion there is no room for doubt or dispute about its meaning, which is obviously but another way of saying that there is no room for judicial construction of the policy, save only as it is claimed by plaintiffs that its terms are in conflict with certain local statutes, which, insofar as they are applicable to the case, are to be considered as a part of the contract, and are to be given the same force and effect in determining the rights and liabilities of the respective parties as if they had been actually written in the policy. In other words, the parties were bound to comply with the laws of Missouri in writing the policy, which was a Missouri contract; and if it should be true, as plaintiffs so earnestly contend, that the language of the policy purporting to exclude the double indemnity coverage from the extended term insurance conflicts with local statutory provisions, then the latter must control, and any contrary language in the policy is to be taken as illegal, void, and ineffective. [Cravens v. New York Life Insurance Co., 148 Mo. 583, 50 S. W. 519; Whittaker v. Mutual Life Insurance Company of New York, 133 Mo. App. 664, 114 S. W. 53; Chandler v. The John Hancock Mutual Life Insurance Co., 180 Mo. App. 394, 167 S. W. 1162.]

Nor, in holding that the policy in suit is unambiguous, are we in anywise in conflict with our decisions in Salamone v. Prudential Insurance Company of America (Mo. App.), 103 S. W. (2d) 506, wherein we held that a policy of the same general import as this was ambiguous, and being so, was to be construed most favorably to the insured.

In the Salamone case the policy provided that upon the lapse of the same for nonpayment of premium the insured should automatically become entitled to nonparticipating extended insurance for whatever the term might be, and that "the amount of insurance payable if death occur within said term shall be the same amount as that which would have been payable if this policy had been continued in force."

The decisive factor in the Salamone case was the fact that there was no language in any part of the policy specifically excepting or exempting the accidental death benefit while the policy was continued in force under its extended insurance provision, and it was "in view of such provisions and the absence of language expressly excluding the 'accidental death benefit' while the policy was continued in force under the extended insurance provision" that this court concluded that the amount of insurance payable if death occurred by accident within the term of extended insurance should be the same amount as that which would have been payable if the policy itself had been continued in force, that is, the full amount of the policy including the accidental death benefit. However in the case at bar, as clearly distinguished from the facts of the Salamone case, the policy did definitely and specifically exclude the double indemnity coverage from the amount of the paid-up extended term insurance which was to be continued in force upon the lapse of the policy for nonpayment of premiums; and the policy is therefore to be enforced according to its terms, unless such attempted exclusion of the double indemnity coverage from any extended term insurance, though plainly provided for, was nevertheless void and ineffective as contrary to express statutory provisions.

Now the statutes upon which plaintiffs rely are sections 5741 and 5743, Revised Statutes of Missouri, 1929 (Mo. St. Ann., secs. 5741 and 5743, pp. 4388 and 4394), which are a part of our local nonforfeiture statutes, and, as we have already pointed out, prohibit the inclusion in those policies to which they apply of terms contrary to their provisions.

Section 5741 not only provides for extended term or temporary insurance upon the lapse of a policy for nonpayment of premium after the payment upon it of three or more annual payments, but also provides, as presently enacted, that "the amount of such temporary insurance shall be such as is specified in the policy, but never less than the face amount insured by the policy reduced by the unpaid portion of notes and indebtedness aforesaid."

Such is the purport of the section following its amendment in 1923 (Laws 1923, p. 233), though prior to the amendment, instead of providing, as it now does, that the amount of the extended term or temporary insurance shall be such as was specified in the policy but never less than the face amount thereof, it provided (Sec. 6151, R. S. Mo. 1919) that the temporary insurance should be ''for the full amount written in the policy.''

Section 5743, which, incidentally, was not amended along with section 5741, provides that if the death of the insured occur within the term of temporary insurance as determined in section 5741, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, ''the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding.''

It happens that two cases involving the very issue decisive of the case at bar have arisen in the United States District Court for the Western District of Missouri, and that an appeal from the judgment of the district court was in each instance perfected to the Circuit Court of Appeals for the Eighth Circuit. Those cases are New York Life Insurance Co. v. Rositzky (C. C. A.), 45 Fed. (2d) 758, and Valenti v. Prudential Insurance Company of America (C. C. A.), 71 Fed. (2d) 229.

In the Rositzky case, which involved a Missouri contract written prior to the amendment of section 5741 in 1923, the policy provided for double indemnity in the case of accidental death, and also provided that upon the lapse of the policy for default in the payment of premiums, the cash surrender value of the policy should be automatically applied, in the absence of the exercise of any other option on the part of the insured, towards the purchase of continued insurance from the date of default ''for the face of the policy,'' but ''without . . . double indemnity benefits.''

The court very properly held that the policy, notwithstanding its attempted exclusion of double indemnity benefits from the continued insurance provided for, was governed by section 6151, Revised Statutse of Missouri, 1919, as well as by what is now section 5743, Revised Statutes of Missouri, 1929, and that the attempted exclusion of the double indemnity coverage from the continued insurance was therefore illegal and in contravention of the two statutes, the first of which required the continued insurance to be ''for the full amount written in the policy,'' and the second of which provided, as it still does, that if no condition of the insurance other than the payment of premiums shall have been violated by the insured, ''the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding.''

The Valenti case, however, involved a Missouri contract written after section 5741 had been so amended in 1923 as to provide that the amount of temporary insurance, instead of being "for the full amount written in the policy," might be "such as is specified in the policy, but never less than the face amount insured by the policy."

In the Valenti case the policy provided for double indemnity in the event of accidental death, but expressly provided that the accidental death benefit was only payable "while there is no default in the payment of premium." At the time of his death, which was by accident, Valenti was in default in the payment of premiums on his policy; and the question decisive of the case was whether the provision of his policy exempting double indemnity in the event death occurred during default in the payment of premiums was invalid by reason of conflict with the Missouri statutes mentioned.

Counsel for Valenti relied upon the Rositzky case as the chief authority for their contention that the double indemnity was recoverable, but both the appellate court and the district court found that the Rositzky case was of no value in the decision of the Valenti case in view of the amendment of 1923, which made it no longer obligatory that the amount of the extended insurance should be "for the full amount written in the policy," but instead left the parties free to contract that the same might be "such as is specified in the policy, but never less than the face amount insured by the policy."

In its final legal aspects the situation in the case at bar is no different from that before the federal court in the Valenti case, and if that case may be said to have been determined upon a proper construction of the Missouri statutes, then the result must be that plaintiffs herein are not entitled to recover the double indemnity sued for in this case.

Counsel for plaintiffs argue, however, that the Valenti case was not soundly ruled; that the "slight" or "trifling" change made in section 5741 by the amendment of 1923 worked no material or substantial change in its meaning; and that consequently, despite the amendment of 1923, the case at bar should be controlled by the Rositzky case, or at least that the same should be regarded; as persuasive authority for a result favorable to the plaintiffs.

We think we would be wholly unwarranted in accepting counsel's view that the amendment of 1923 was negligible and meaningless, and that the statute, after the amendment, had no different meaning than it had before.

In determining the effect of an amendment of a statute the court must always proceed upon the basis that the Legislature intended to accomplish something by the amendment. [Holt v. Rea, 330 Mo. 1237, 52 S. W. (2d) 877.]

The purpose of the amendment of 1923 seems perfectly plain. Prior thereto, no matter what the consideration, the parties to a

944

policy had no right to specify in the policy an amount of extended term or temporary insurance less than "the full amount written in the policy." That was the sum and substance of the holding in the Rositzky case construing a policy containing terms in direct conflict with such express statutory provision. However, as a result of the amendment, the parties are now permitted to specify or limit the amount of temporary insurance to be continued in force after a lapse of the policy, so long as the amount of such temporary insurance so specified is not reduced below "the face amount insured by the policy." In other words, in making the amendment in question the Legislature quite evidently took cognizance of the fact that the "face amount" of a life insurance policy is commonly and ordinarily understood to mean that amount which is in all events payable thereunder as straight life insurance, without regard to any additional features of the policy such as accident or disability insurance payable only in the event of certain specified contingencies, and in its discretion amended the statute so as to provide that the straight life insurance provided in a policy might be continued in force for the longer term over which the reserve under the policy would carry it if no part of that reserve were utilized to continue "the full amount written in the policy" for a necessarily shorter term.

Nor does this construction of the effect of the amendment of section 5741 bring it into conflict with section 5743. The latter section by its own terms refers to the amount of temporary insurance required by section 5741, and then says that if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay "the amount of the policy," that is, "such as is specified in the policy, but never less than the face amount insured by the policy," the same as if there had been no default in the payment of premium. Had anything other than this been the intention of the Legislature, it is inconceivable that when amending section 5741 it would have permitted section 5743 to go unamended, and thereby bring the two into hopeless and irreconcilable conflict.

We conclude, therefore, that when the parties to the policy in suit contracted that on surrender or lapse the same should be continued "for its face amount . . . as paid-up extended term insurance . . . but without . . . double indemnity," they intended that it should be continued in force only for its face amount of $1000 plus any outstanding dividend additions, and that the provision specifically excluding the double indemnity coverage from such continued insurance was in nowise in violation of the requirements of either section 5741 or 5743. In other words, construing the policy in the light of the provisions of the statutes, the amount of such extended term insurance was such as was specified in the

policy, and was in fact "the fact amount insured by the policy," and upon the death of the insured defendant was bound to pay only "the amount of the policy," which was the single indemnity coverage, and not "the full amount written in the policy." [Valenti v. Prudential Insurance Company of America, *supra*; Id. (D. C.), 1 F. Supp. 993; Johnson v. Central Life Assurance Society of the United States, 187 Minn. 611, 246 N. W. 354; Orr v. Prudential Insurance Company of America, 274 Mass. 212, 174 N. E. 204; Inter-Southern Life Insurance Co. v. Omer, 238 Ky. 790, 38 S. W. (2d) 931; Great Southern Life Insurance Co. v. Cunningham (Tex. Com. App.), 97 S. W. (2d) 692; Henricks v. Metropolitan Life Insurance Co. (Cal.), 61 Pac. (2d) 1162.]

Incidentally, the last two cited cases overruled decisions of inferior courts of Texas and California upon which plaintiffs have relied in this action as authority for their contention that they were entitled to recover the double indemnity coverage of the policy.

It follows from all that has been said that the judgment rendered by the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hostetter, P. J.,* and *McCullen, J.,* concur; *Becker, J.,* absent.