FRANCES BRITT WILKINS (PLAINTIFF), RESPONDENT, v. METROPOLITAN LIFE INSURANCE COMPANY, A CORPORATION (DEFENDANT), APPELLANT.—159 S. W. (2d) 354.

St. Louis Court of Appeals. Opinion filed March 3, 1942.

*C. C. Franklin* and *Harry H. Evans* for respondent.

*Hunter & Chamier, Kenneth E. Midgley* and *Michaels, Blackmar, Newkirk, Eager & Swanson* for appellant.

*Harry Cole Bates* of counsel.

588

BENNICK, C.—This is an action to recover the accidental death benefits under two policies of industrial insurance which were issued by defendant, Metropolitan Life Insurance Company, upon the life of one William Cooper, who died on August 1, 1936, as the result of bodily injuries sustained directly and independently of all other causes through external, violent, and accidental means. Plaintiff sues under the facility of payment clause contained in each of the policies; and defendant expressly disavows any question regarding her capacity to maintain the action.

The one policy, which was for an amount of $210 with increasing benefits, was issued in 1903, and the other, which was for an amount of $258 with increasing benefits, was issued in 1908. Each policy provided for the payment of a weekly premium, and further provided that except for a grace period of four weeks, if any premium should not be paid when due, the policy should be void.

Neither policy, when issued, contained a provision for the payment of an accidental death benefit, but in 1928 defendant prepared and sent out an announcement, effective December 1, 1928, granting accidental death benefits on all industrial policies then in force, including the two in question in this proceeding.

Such announcement provided that upon due proof of the insured's accidental death as therein defined "while this policy is in force, and while premiums are not in default beyond the grace period specified in this policy," the company would pay, in addition to any other sums due under the policy, and subject to its provisions, an accidental death benefit "equal to the face amount of insurance then payable at death," save that if the insured's bodily injuries should be sustained while the insured was engaged in the course of certain excepted employments, then in that event, the accidental death benefit should be reduced to "one-half of the face amount of insurance then payable at death."

A still further provision of the announcement was that the accidental death benefit was granted without specific extra premium being charged therefor, the cost being included in the premium for the policy.

Both policies lapsed for nonpayment of premiums on August 1, 1932, four years to the day before the death of the insured, which occurred under circumstances making defendant liable for the payment, not only of the principal amounts of the policies which were of course due regardless of the cause of death, but also of accidental death benefits "equal to the face amount of insurance then payable

at death,'' if the accidental death coverage provided by the announcement was carried over as temporary or extended insurance beyond the date of lapse. Defendant paid the principal amounts of the policies, but refused to pay the accidental death benefits upon the ground that such coverage had not been carried forward after lapse as temporary or extended insurance. Thereupon this action was instituted; and from a judgment entered for plaintiff for the aggregate amount of $686.40, defendant's appeal to this court has followed in the usual course.

Thus we have the issue squarely drawn of whether, upon the lapse of the policies for default in the payment of premiums, the accidental death coverage was continued as temporary or extended insurance. It was admitted, incidentally, that if the net value of each policy at the date of lapse was computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum, and the proper proportion of such net value was taken as a net single premium for the purchase of temporary or extended insurance from the date of lapse, the term of such insurance, even for double the principal sum of each policy, would have extended well beyond the date of death of the insured. Defendant insisted, however, that such length of term could be calculated only by assuming that the full amount of insurance to be extended was straight life insurance, and that otherwise it was mathematically impossible to make the calculation. This upon the theory that the actuaries' or combined experience table of mortality, as well as any similar table, is based solely upon experience as to the fact of death and not its cause or mode, and therefore, while accurate in predicting the probability of death itself in the case of a given number out of a large group of insured persons at a given age, would be wholly inappropriate as a basis for computing premiums and terms of insurance based upon the probability that any particular number of such persons would die by accidental means.

While defendant has set out a number of assignments of error in its brief, it points out that all such alleged errors arose out of and were occasioned by the lower court's ruling that upon the lapse of the policies for nonpayment of premiums, the accidental death coverage was thereafter continued as temporary or extended insurance. It follows, therefore, that we need only consider the single, ultimate question of defendant's liability for the payment of accidental death benefits, the decision of which question will be in turn dispositive of each and every one of the alleged errors specifically assigned.

It is conceded that in the absence of any language in the original policies or subsequent announcement providing for the continuation of the accidental death coverage as temporary or extended insurance, plaintiff's rights, if any, are purely statutory, that is, to be determined under our nonforfeiture statutes, which are as much a part of the

contract as though they had been expressly written into it. [Smith v. Equitable Life Assur. Soc. of the United States, 232 Mo. App. 935, 107 S. W. (2d) 191.] Moreover, since the announcement granting accidental death coverage in addition to the straight life coverage amounted, in legal effect, to an amendment of the original policies, the statutes to be considered are those in force at the effective date of the announcement (December 1, 1928), as of which date, and not before, liability for the payment of accidental death benefits was contracted for by defendant. Those statutes are the present Sections 5852 and 5854, Revised Statutes of Missouri 1939 (Mo. Stat. Ann., secs. 5741 and 5743, pp. 4388 and 4394); and we must therefore look to their provisions in determining the question of whether, upon the lapse of the policies for nonpayment of premiums, the accidental death coverage was required to be carried forward as temporary or extended insurance. [Valenti v. Prudential Ins. Co. of America (D. C.), 1 F. Supp. 993, aff., (C. C. A. 8), 71 Fed. 229.]

Section 5852 not only provides against the forfeiture of a life policy for nonpayment of premiums after payment upon it of three or more annual payments, but also expressly provides that the amount of temporary or extended insurance to be granted "shall be such as is specified in the policy, but never less than the face amount insured by the policy reduced by the unpaid portion of notes and indebtedness."

Section 5854 provides that if the death of the insured occur within the term of temporary or extended insurance as determined in Section 5852, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, "the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding."

In this case there was no amount of extended insurance specified in either policy or in the announcement subsequently issued by defendant, so that upon lapse of the policies for default in the payment of premiums, the amount which was required to be extended in each instance under Section 5852 (there being no indebtedness) was "the face amount insured by the policy." And under Section 5854, which provides the rule of payment upon a commuted policy and is obviously to be read along with Section 5852 to which it specifically refers, defendant's obligation, upon the death of the insured, was to pay "the amount of the policy" being carried on temporary or extended insurance, that is, "the face amount insured by the policy" as provided by Section 5852. In other words, it is Section 5852 which fixes the amount and term of temporary or extended insurance; and Section 5854 can mean no more than that if the insured dies during the term so fixed, the compaony shall be required to pay the amount so fixed, the same as though there had been no

default in the payment of premium, anything in the policy to the contrary notwithstanding. [Smith v. Equitable Life Assur. Soc. of the United States, *supra.*]

The whole question would therefore seem to resolve itself into one of what was "the face amount insured by the policy." If such face amount was merely the original amount written in each policy as straight life insurance, then defendant has already discharged its full obligation; but if such face amount included the additional amount made payable only in the event of death by accidental means, defendant has not discharged its full obligation, and plaintiff should have the judgment which was entered in her favor in the court below.

If nothing appears to show a contrary intention on the part of the contracting parties, the "face amount" of a policy of life insurance is commonly understood to mean the amount specified in the policy which is in all events payable as straight life insurance, without regard to any additional features of the policy such as accident or disability insurance made payable only in the event of the happening of certain specified contingencies, and usually determined, as to amount, by some relation which such additional coverage bears to the face amount fixed in the policy. [Smith v. Equitable Life Assur. Soc. of the United States, *supra.*]

In this case, not only was there no language indicating a different intention on the part of the contracting parties, but on the contrary the wording of the announcement would seem to disclose that the term "face amount" was purposely employed in its usual and ordinary sense, and that the accidental death benefit provided by the announcement was not intended to constitute a part of the face amount of the policies. Instead, the "face amount" of insurance payable at death, that is, the amount fixed in the original policies, was expressly made the measuring stick by which to determine the amount of the additional benefit to be paid upon accidental death, which was to be a sum "equal to the face amount of insurance then payable at death." In other words, the accidental death benefit was something granted in addition to the face amount of the policies; and while itself not constituting a part of the face amount, was to equal the face amount if the insured died by accidental means, unless death occurred while the insured was engaged in the course of certain excepted employments, in which event the additional benefit should be reduced to "one-half of the face amount of insurance then payable at death."

The language employed by the company in writing its contract is of course of importance only in determining whether it was the intention to grant an extended coverage over and above the minimum which the statute requires. ·Had defendant expressly undertaken to include accidental death coverage within any temporary or extended insurance which was to be granted, Section 5852 would have

been no bar. As already pointed out, such section clearly provides that "the amount of such temporary insurance shall be such as is specified in the policy," which may exceed the face amount, "but never less than the face amount insured by the policy." The latter is all the statute requires; and if more is to be given, it must be by virtue of private agreement between the parties. [Salamone v. Prudential Ins. Co. of America (Mo. App.), 103 S. W. (2d) 506.]

In the present instance, the language indicates that the accidental death benefit, though to be measured in terms of equality to the "face amount," was itself not intended to be regarded as a part of "the face amount insured by the policy" so as to be included within the amount of any temporary or extended insurance to be granted under statutory provisions in the event of the lapse of the policies for non-payment of premiums. And as a still further indication that this is so is the fact that liability for payment of accidental death benefits was not assumed unless the accidental death occurred "while this policy is in force, and while premiums are not in default beyond the grace period specified in this policy."

Two concurring conditions were thus laid down as conditions precedent to the company's liability for the payment of accidental death benefits, the one, that the policy should be in force, and the other, that premiums should not be in default beyond the grace period. Granting that the policy is in force (for limited purposes) when continued as extended insurance, the premiums are necessarily in default beyond the grace period, or else there would be no occasion for extended insurance which only comes into being when there is a default in the payment of premiums. The requirement making the current payment of premiums a condition precedent to the accidental death benefit coverage is wholly inconsistent with the idea of such a coverage on temporary or extended insurance which only follows after lapse; and this circumstance, considered along with the language of the announcement indicating an intention that the accidental death benefit was not to be regarded as a part of the face amount of the policy, leads inevitably to the conclusion that such accidental death coverage was not carried forward as temporary or extended insurance so as to have imposed liability upon defendant over and above that which it has already voluntarily discharged. [Valenti v. Prudential Ins. Co. of America, *supra.*]

In support of her position, plaintiff relies chiefly upon the decision of this court in Fletcher v. Metropolitan Life Ins. Co. (Mo. App.), 137 S. W. (2d) 621, which involved the identical question at issue in this proceeding.

In that case, taking note of the absence of any language specifically excluding accidental death coverage while the policy was running on extended insurance, the court held that there was ambiguity in the policy provisions when considered in the light of what is now

Section .5852; and that with such ambiguity resolved in favor of the insured, the company was to be held liable for payment of the accidental death benefit upon the death of the insured by accidental means during the term of temporary or extended insurance.

Unquestionably the decision in the Fletcher case lends full support to plaintiff's theory of recovery. However, since its rendition, the Supreme Court. has handed down a decision in Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S. W. (2d) 474, which, in its effect, is the last controlling decision upon the question of whether the nonforfeiture statutes require the inclusion of accidental death coverage within the amount of temporary or extended insurance, and which, in deciding the point in the negative, approved and cited the cases of Smith v. Equitable Life Assur. Soc. of America, *supra*, and Valenti v. Prudential Ins. Co. of America, *supra*.

In the Cleaver case, as in the case at bar, the policy contained language disclosing the intention of the parties that the principal sum payable under the policy should be regarded as its "face amount." Under the further language of the policy, the company's liability for double indemnity in the event of accidental death attached only if such death occurred "during the premium paying period, before default in the payment of any premium." In its import and legal significance, that provision was no different than the language used in the case at bar, where defendant expressly limited its liability for the accidental, death benefit to contingencies where the death of the insured occurred "while this policy is in force, and while premiums are not in default beyond the grace period specified in this policy." In other words, in both instances the current payment of premiums was made a condition precedent to the company's liability for double indemnity on accidental death, something foreign to the idea of such coverage on extended insurance, which only comes into effect upon the lapse of the policy for the nonpayment of a current premium.

For the purposes of the Cleaver case, since the company's liability on the double indemnity agreement required that the insured's accidental death must have occurred "during the premium paying period, before default in the payment of any premium," it was held essential, if the plaintiff was to recover, that it be shown that the policy had not lapsed for nonpayment of premium; and inasmuch as the insured himself had concededly not kept up his premium payments, the fact of nonlapse could be shown only by recourse to the automatic premium loan provision of the policy, which, if valid, would have required that the company advance all premiums for the insured, as loans against his policy, up to the date of his accidental death. However, as the court pointed out, if such automatic premium loan provision was invalid, then. Cleaver's insurance, under the nonforfeiture statutes, became temporary or extended insurance for the face amount insured by the policy as of the date when Cleaver

himself ceased paying the premiums upon his policy; "but," said the court, "the double liability agreement terminated when such extended insurance began."

This is an effectual holding by the Supreme Court that in the case of a policy which constitutes the accidental death coverage something additional to the face amount of the policy, and which makes the current payment of premiums a condition precedent to the company's liability for payment of the accidental death benefit, the lapse of the policy for nonpayment of premium terminates the company's liability for double indemnity, and merely requires that the policy, under Section 5852, be commuted into one of temporary or extended insurance for "the face amount insured by the policy," that is, for the principal sum of straight life insurance which is in any event payable upon the death of the insured.

Moreover, this holding gives logical effect to what must have been the purpose of the amendment in 1923, which resulted in our present Section 5852. Prior to the amendment, the statute (Sec. 6151, R. S. Mo. 1919) had provided that upon the lapse of a policy for non-payment of premium, the available net value should be applied to the purchase of extended insurance "for the full amount written in the policy;" and with this the statutory requirement, it was held in New York Life Ins. Co. v. Rositzky (C. C. A. 8), 45 F. (2d) 758, that an attempted exclusion of double indemnity coverage from the amount of extended insurance was illegal and in contravention of statute. However, since the amendment, the statute requires, not that the amount of extended insurance shall be "the full amount written in the policy," but on the contrary that it shall be "such as is specified in the policy, but never less than the face amount insured by the policy." As we have already pointed out, this permits the parties to contract for any amount of extended insurance they may wish so long as such amount is not less than the minimum which the statute requires; but if (as in the case at bar) no amount of extended insurance is specified in the policy, then the amount to be carried on temporary or extended insurance is "the face amount insured by the policy," which is the principal sum payable as straight life insurance upon the death of the insured from any cause. [Cleaver v. Central States Life Ins. Co., *supra*; Smith v. Equitable Life Assur. Soc. of the United States, *supra*; Valenti v. Prudential Ins. Co. of America, *supra*.]

It follows from all that has been said that the judgment rendered by the circuit court should be reversed; and the Commission so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the Circuit Court is accordingly reversed. *Anderson, J.,* concurs; *Hughes, P. J.,* concurs

in result only in separate opinion; *McCullen, J.*, dissents in separate opinion and requests certification to Supreme Court. The cause is accordingly certified to the Supreme Court.

## CONCURRING OPINION.

HUGHES, P. J.—Section 5852, Revised Statutes 1939, the non-forfeiture statute, which is as much a part of these policies as if expressly written therein, provides that the amount of extended insurance in the event of nonpayment of premiums thereon "shall be *such as is specified in the policy,* but never less than the *face amount insured by the policy* reduced by the unpaid portion of notes and indebtedness aforesaid;" etc. What was the amount as specified in these policies, and what was the face amount insured by the policies? It was, as to one policy, as originally written, $210 in the event of death from natural causes or it was double that amount in the event of accidental death, and as to the other policy it was $258 in the event of death from natural causes or it was double that amount in the event of accidental death. Certainly, if there had been no failure in the payment of premiums at the time of the death of the insured by accidental means, the amount of insurance as specified by the policy and as shown on the face of the policy would have been double the amount of straight life insurance as specified by the policy. I am unable to understand how the amount specified in the policy or the face amount insured by the policy is changed by the payment or want of payment of the premiums. In other words the amount specified in the policy or the face amount insured by the policy, whether the premiums are paid or not, is only ascertainable by reference to two things, first, an inspection of the face of the policy, and second, an inquiry as to the cause of death. As we said in the case of Fletcher v. Metropolitan Life Ins Co., — Mo. App. —, 137 S. W. (2d) 621, 623. "It is one policy promising to pay two kinds of benefits covered by one consideration or premium as stated in the announcement."

To illustrate, if the beneficiary had taken the first of these policies to the insurer and stated, "The insured is dead, what am I entitled to as specified in this policy, or, as shown on the face of this policy?" the only answer the insurer could have possibly made would be, "I cannot tell what the specified amount is on the face of the policy, unless you further tell me whether the death was from natural causes or from accidental means, because in one case the amount specified on the face of the policy is $210 while in the other case it is $420."

To say that the accidental clause is a gracious gift to the insured which may be presented or withheld by the insurer at its pleasure would be doing violence to the intelligence of the contracting parties. True, the clause was not a part of the policy originally, but when it

was made a part of the policy on December 1, 1928, it was not in the nature of a gift or a present to the insured. It was no doubt carefully thought out and actuarially determined that the insurer was receiving sufficient premiums to justify the more favorable policy, otherwise the insurer would have been giving away something it didn't have. And when it did add this clause it had the effect of changing the amount specified in the policy or as shown on the face of the policy from the fixed sum of $210 to the sum of either $210 or $420, dependent upon the cause of death.

In these policies the additional benefit was added of double the original liability if death occurred from accidental means, that this did not in the lease change the form of the policy to any other kind of insurance than *life* insurance; no more so than if the addition had been that the amount of original liability be doubled if the insured died from heart disease rather than from other causes.

It makes no practical difference that the extended insurance would run for a longer time if the death occurred from natural causes than if it occurred from accidental means; in the one event the policy might have expired and in the other event it would still be in force. It was the unforeseen event, the cause of the death, which was to determine both the amount shown on the face of the policy, and, the term of the extended insurance, if the premiums be not paid when due. If the Legislature had intended otherwise it would have added to the words, "The amount of such temporary insurance shall be such as specified in the policy," these or similar words, *"In case of death from natural causes."* No such limitation was made by the Legislature and we should not read into the section something that is not there.

But notwithstanding my individual views, in the case of Smith v. Equitable Life Assur. Soc., 232 Mo. App. 935, 107 S. W. (2d) 191, this court came to a different conclusion, and held that the "face amount" of a policy meant "that amount which is in all events payable thereunder as straight life insurance, without regard to any additional features of the policy such as accidental or disability insurance payment only in the event of certain specified contingencies;" and thereafter the Supreme Court in the case of Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S. W. (2d) 474, without mentioning the Fletcher case, which was cited in the briefs, held that "the double liability agreement terminated when such extended insurance began," and cited in support thereof the Smith case, thus approving the Smith case. As a good soldier should obey without question the commands of his superior officer, so should a judge cheerfully surrender his individual views and acquiesce in the law as declared by his superiors, and so I concur as to result in the commissioner's opinion.

598

McCULLEN, J.:—I am unable to concur in the opinion written herein by our worthy and able commissioner because I believe the opinion construes into our nonforfeiture statutes a meaning and a purpose not expressed by the Legislature. Also because the opinion, as I view it, fails to construe the policy herein liberally in favor of the insured, but on the contrary construes both the policy and the nonforfeiture statutes most favorably to the insurer, thereby in this respect conflicting with numerous decisions of our Supreme Court.

It will be observed that our commissioner's conclusion is based upon the decision in Cleaver v. Central States Life Ins. Co. (Mo.), 142 S. W. (2d) 474, which he regards as having overruled Fletcher v. Metropolitan Life Ins. Co. (Mo. App.), 137 S. W. (2d) 621, and as having approved Smith v. Equitable Life Assur. Soc., 232 Mo. App. 935, 107 S. W. (2d) 191, both last-named cases having been decided by this court before the Cleaver case was decided by the Supreme Court. It will be noted that, although the Fletcher case, *supra,* was cited in the briefs in the Cleaver case, it was not mentioned in the Cleaver case opinion.

As I see the problem, there are important differences in the terms of the policy in the case at bar and the policy in the Fletcher case, *supra,* on the one hand and the policies in the Smith and Cleaver cases, *supra,* on the other. The cases named are the main cases around which the contentions of the parties herein revolve. In the Smith and Cleaver cases there were language in the policies which was clear, positive and unambiguous, specifically excluding double indemnity if death should occur after default in premium payment.

In the Smith case, *supra,* option (c) of the policy promised "to continue the insurance for its face amount . . . as paid-up extended term insurance for the period shown in the opposite table . . . *but without . . . double indemnity . . ."* (Emphasis ours.) Opposite option (c) in the policy in said case was the table referred to therein showing plainly the number of years and months the policy should be continued as paid-up extended term insurance "without double indemnity" after the policy had been in force for a given period of years short of maturity. By the insured's failure to pay a certain premium when due, option (c) of the policy automatically went into effect "for its face amount" as paid-up extended term insurance, but, in accordance with the specific language of the policy, "without double indemnity."

In the Cleaver case, *supra,* the policy itself contained on its face a definition of "face amount" by promising to pay upon receipt of due proof of death of the insured "the sum of $10,000 *which is the face amount hereof."* Furthermore, the policy in the Cleaver case specifically provided for the exclusion of double indemnity for acci-

dental death in the following language: "The additional sum payable in the event of the accidental death of the insured shall be due if the Company receives due proof that such death occurred *during the premium paying period before default in the payment of any premium . . .*" (Italics ours.)

By the provision in the policy in the Cleaver case for the payment of the additional sum or double indemnity if accidental death should occur "during the premium paying periods," a clear distinction was made between such a death occurring at such a time and such a death occurring during the extended insurance period, thereby specifically, positively and without any doubt excluding, in so far as the policy was concerned, benefits for accidental death during such extended insurance period. The policies in the Smith and Cleaver cases were therefore entirely different from the policy involved in the case at bar and the policy involved in the Fletcher case.

In the Fletcher case, *supra*, the language in the policy was: "While this policy is in force and while premiums are not in default beyond the grace period specified in the policy, the Company will pay, in addition to any other sums due under this policy and subject to the provisions of this policy, an accidental death benefit equal to the face amount of insurance then payable at death." The language of the policy on this point in the case at bar is identical with the language in the Fletcher case, *supra*. It will be noted that, while in the Smith and Cleaver cases, *supra*, there is language which excludes double indemnity if the accidental death of the insured should occur at a time clearly and unambiguously stated, no such definiteness and clarity appeared in the language of the policies in the Fletcher case and the case at bar. The language in the policy in the case at bar as well as in the Fletcher case, namely, "while this policy is in force and while premiums are not in default beyond the grace period," does not constitute a clear, unequivocal and unambiguous exclusion of double indemnity. It cannot accurately be said that the policy was not "in force" after premiums due were not paid by the insured because, upon such nonpayment of premium, the nonforfeiture statutes brought into effect the extended insurance, thereby keeping it "in force." Those statutes are read into every such policy whether stated therein or not. [Cleaver case, *supra*, l. c. 478.] It is argued by the defendant herein that the policy "lapsed" upon default in premium payment. There was not in any true sense of the word a "lapse" of the policy herein because it was still "in force" by virtue of extended insurance under the nonforfeiture statutes. The premiums then were being paid as a net single premium out of the net value reserve fund belonging to the policyholder. [Westerman v. Supreme Lodge K. of P., 196 Mo. 670, 712, 94 S. W. 470.]

The term "lapse," as used by defendant in its arguments herein, comes down from the days preceding our nonforfeiture statutes.

Such a term may have been properly used before our nonforfeiture statutes were enacted, but it does not now correctly describe the status of a policy running on extended insurance under such statutes. While there may be a failure of the insured to pay the amount of a premium due, a "lapse" of the policy does not then occur. There cannot really be a "lapse" in such a policy since the time our nonforfeiture statutes were enacted until the period of extended insurance purchased by the net single premium, coming from the accumulated reserve on the policy, has expired. The very purpose and motive of the Legislature in enacting such statutes was to avoid and defeat forfeitures. Our Supreme Court, quoting with approval from an opinion by Judge THAYER in Mutual Reserve Life Ins. Co. v. Roth, 122 Fed. 853, said:

"The Legislature intended to secure the policy-holders the benefit of the reserve on their policies if they had paid 'two full annual premiums,' and not permit the reserve to be forfeited or appropriated by the insurer. It is a well-known fact that the forfeiture of such reserve values for non-payment of premiums had become a source of great profit to insurance companies, because the premiums which they were in the habit of exacting from the insured on life policies were so fixed as to be considerably in excess of the cost of simply carrying the risk from one annual period to another so as to accumulate a reserve. The Legislature deemed it inequitable to deprive the insured of the benefit of payments which he had actually made." [Westerman v. Supreme Lodge K. of P., 196 Mo. 670, 713, 94 S. W. 470.]

The Legislature did not say that the extended insurance provided for in the statutes was to be applied only to straight life insurance. It takes elaborate and involved argument to "construe" such a meaning into them. Such argument is not convincing. Surely, if the Legislature intended to limit the protection of its nonforfeiture enactments to certain kinds of insurance only and exclude others it would have plainly said so. No amount of argument can supply what the Legislature did not say. When we find as here a clause using the phrase "while this policy is in force and while premiums are not in default" as the only language descriptive of the time of the accidental death for which the double indemnity will be paid, I think there is ambiguity in the policy.

I believe there is a substantial difference between the language in the policy in the Cleaver case on the one hand and the Fletcher case and the case at bar on the other which not only justifies but calls for a conclusion different from that reached by our commissioner. This view is strengthened when it is considered that in the Fletcher case, which held there was ambiguity in the policy therein, *certiorari* was applied for but was denied by the Supreme Court. Moreover, although the Fletcher case was called to the attention of the Supreme

Court in the briefs in the Cleaver case, the court did not even mention the Fletcher case in deciding the Cleaver case. Of course, denial of *certiorari* does not necessarily mean approval of the opinion attacked, nevertheless the court thus had two opportunities to disapprove the Fletcher case but did not do so. I think I may without impropriety suggest that the reason the court did not mention the Fletcher case in deciding the Cleaver case was that the two cases were regarded as being so unlike that no discussion was deemed necessary.

In the Fletcher case this court confined itself strictly to the case before it and held that, since there was no clear and unambiguous exclusion of double indemnity, any doubt as to the meaning of the language used should be resolved in favor of the insured and against the insurer, thus following the long-established rule laid down and followed by our Supreme Court and the Courts of Appeals in this State for many years, and that under the nonforfeiture statutes the policy remained "in force" for both kinds of benefits promised therein. In the Fletcher case this court did not attempt to pass upon whether or not a clear and specific exclusion of double indemnity in such a policy would have been in violation of our nonforfeiture statutes, sometimes called extended insurance statutes. In that case we were not required to discuss that question because we found there was no such exclusion, and there was no decision of our Supreme Court at that time disallowing the double indemnity where the death occurred while the policy was running on extended insurance, the Cleaver case not having then been decided. We therefore held that the nonforfeiture statutes extended the insurance not only for the single indemnity but also for the additional or so-called double indemnity, it having been conceded therein that the insured had died through accidental means.

It must not be forgotten that the Supreme Court in the Cleaver case itself followed and applied the rule of liberal construction in favor of the insured. The court in that case did not deny the double indemnity. On the contrary, it allowed such indemnity under the above-mentioned rule of liberal construction. It is true the court, by way of incidental discussion, did say that "if" the automatic loan provision should be found to be invalid under the Missouri nonforfeiture statutes, then Cleaver's insurance became temporary term insurance, and that "the double liability agreement terminated when such extended insurance began." The court then cited the Smith case, *supra,* and Valenti v. Prudential Ins. Co., 71 Fed. (2d) 229, but did not discuss the point any further than the statement last above quoted. It must be remembered, however, that the court did not reach the conclusion that the automatic loan provision was invalid. The hypothetical "if" situation referred to was not present. On the contrary, the court reached the opposite conclusion, namely, that the automatic loan provision was valid and that the whole policy, in-

cluding the double indemnity agreement, remained in force. It is thus apparent that the Cleaver case was not decided upon the point which the defendant company in the case at bar claims it was. The precise points of the decision in the Cleaver case were that the automatic loan provision was valid; that there was no default of premium on the policy; that it never became subject to commutation to term insurance, but that all of its terms and agreements remained in full force and effect; and that the plaintiff therein was entitled to recover the accidental death insurance sued for.

The statement by the court in the Cleaver case, made in incidental discussion, that "the double liability agreement terminated when such extended insurance began," has been seized upon by defendant company and constitutes the foundation of its contention herein, but it is not in my opinion a sufficient basis to say that the court intended thereby to "construe" for the first time into our non-forfeiture statutes without any further discussion of this tremendously important question, a meaning and purpose on the part of the Legislature to permit insurance companies to issue policies of insurance promising double indemnity for death by accidental means and to escape performance of such promise where such death occurs while the policy is running on extended insurance. I believe I am justified in saying that the Supreme Court did not intend so to hold because the court did not discuss that question at all. The Supreme Court itself has held that a Court of Appeals is not bound to follow incidental discussions in a Supreme Court opinion. [State ex rel. Anderson v. Hostetter et al. (Mo.), 140 S. W. (2d) 21, 24.] Furthermore, in view of the undeviating position taken by our Supreme Court for many years on the question of ambiguity in insurance policies and the construction of statutes relating thereto, I think it is not improper to venture the view that when that court comes to consider fully such question for final decision, it is not likely to read into the nonforfeiture statutes anything which is not clearly expressed therein by the Legislature.

The defendant company in the case at bar presents an extended argument giving its interpretation of the meaning and purpose of Section 5852, R. S. Mo. 1939, of our nonforfeiture statutes, especially that part thereof which provides that the amount of temporary (extended) insurance "shall be such as is specified in the policy but never less than the face amount insured by the policy reduced by the unpaid portion of notes and indebtedness aforesaid." The insured, of course, did not have the benefit of such extended argument when the announcement was issued to him by the company which undoubtedly led him to believe he was getting an addition to his policy which would pay his beneficiary double indemnity in case of his death by accidental means at any time while the policy was "in force." Neither did the insured have the slightest knowledge of the

actuarial difficulties presented at length by defendant in its briefs herein with respect to carrying death benefits on extended insurance for death by accidental means. That was a matter of internal management of the company with which the insured was not concerned and not responsible for.

I think it is unnecessary for me to prolong this opinion to discuss the meaning and purpose of Section 5852, *supra*. It is sufficient to say I am in agreement with the separate opinion written by Presiding Judge HUGHES on that question, although I do not concur in the conclusion he reached. He concluded that under the Cleaver case we are required to reverse the judgment herein, whereas I think that case is distinguishable from the case at bar. The reasoning in Judge HUGHES' opinion on the meaning of Section 5852, *supra*, is in harmony with and gives effect to the language used by the Legislature in Section 5854, Revised Statutes, Missouri, 1939, as follows:

"If the death of the insured occur within the term of temporary insurance covered by the value of the policy as determined in section 5852, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, *the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding* . . ." (Italics ours.)

If the terms of the policy in the case at bar were not distinguishable from the terms of the policy in the Cleaver case, I would, of course, be bound under the constitution and my oath of office to concur in our commissioner's opinion and follow the decision in the Cleaver case, a duty which I would cheerfully and without hesitation or reservation perform regardless of any individual opinion I might entertain. However, I believe there is a clear distinction on the facts between the Cleaver case on the one hand and the Fletcher case and the case at bar on the other. As I have pointed out, the Cleaver case was definitely decided on the question of the validity or non-validity of the automatic loan provision contained in the policy and not on any language in the nonforfeiture statutes. The court upheld the loan provision therein and ordered the double indemnity for accidental death to be paid. In making that clear decision, the court, in passing, made the hypothetical remark heretofore quoted but did not discuss the language, meaning, purpose or history of the nonforfeiture statutes at all. It therefore seems clear to me that the court did not intend by such brief remarks to pass upon the nonforfeiture statutes and determine for the first time their meaning, purpose and application in connection with such a contention as is made by the defendant company in the case at bar.

When we consider the language and history of our nonforfeiture statutes, it seems to me to be crystal clear that the Legislature had in mind one supreme purpose in the enactment thereof as well as in

making subsequent amendments, and that was to protect policy-holders against forfeitures of their insurance by extending the period of insurance after a policyholder's failure to pay premiums when due. This was accomplished by requiring that a portion of the net value or accumulated reserve of the policy, which belongs to the policyholder and not to the company (Westerman case, *supra*), be used to keep the policy "in force" for such period of time as said value taken as a net single premium will purchase. The Legislature said nothing whatsoever about any distinction between "straight life insurance" and "insurance for accidental death" or "death by accidental means."

Notwithstanding the fact that the Legislature's deliberate purpose in enacting such laws was to avoid and defeat forfeitures, we are urged by defendant herein to hold, in effect, that the lawmaking body intended to make such "non-forfeiture" statutes become "for-feiture" statutes with respect to insurance for death by accidental means. I cannot see my way clear to adopt such a view. The argument of defendant that, under the construction of the statutes urged by it, the period of extended insurance for death other than by accident would be lengthened by cutting off the accidental death benefit is in my opinion beside the point. The answer to such contention is that the Legislature did not so provide, and that was and is a matter of legislative policy solely within the province of that body. Further-more, such a construction would result in a "forfeiture" of the accidental death benefit and thereby defeat the very purpose of the Legislature in enacting the "nonforfeiture" statutes. If the statute presents actuarial difficulties or works hardship on insurance companies with respect to accident insurance, the remedy is for the Legislature and not for the courts.

Candor requires that I should say I concurred in the Smith case opinion written by our worthy Commissioner, but the passage of time and the advent of this case before us have afforded opportunity for further study of the questions involved, as a result of which I feel compelled to take a different view.

I regret to say that, as I view it, the opinion of our commissioner in the case at bar is in error in construing the nonforfeiture statutes. Also it has inadvertently failed to follow the long-established rule laid down by our Supreme Court to the effect that insurance policies contained doubtful or ambiguous terms must be construed liberally in favor of the insured and against the insurer, and is therefore in conflict with State ex rel. Security Mutual Life Ins. Co. v. Allen et al., 305 Mo. 607, 613, 267 S. W. 379; Henderson v. Massachusetts Bonding & Ins. Co., 337 Mo. 1, 84 S. W. (2d) 922, as well as the Cleaver case, *supra,* and many other cases unnecessary to set forth here.

For the reasons given, I dissent from the opinion of our com-

missioner and request that the cause be certified to the Supreme Court so that it may express its authoritative views on this important question to guide us in future similar cases.